## MILLINGTON v. HILL, FONTAINE & CO.

1. FRAUDULENT CONVEYANCE: *How far good.*

   A conveyance to defraud creditors is good as between the parties and their privies, but may be avoided by creditors of the grantor. If they condone the fraud the conveyance will stand against all comers.

2. SAME: *Estoppel of creditor.*

   If a creditor of a fraudulent grantor, with knowledge of the fraud, accepts from the grantee the purchase price agreed to be paid for the land, he thereby affirms the sale and waives the right to complain of the fraud.

3. SAME: *Fraudulent grantee without remedy.*

   A party bargaining with a debtor with fraudulent intent, does so at the peril of having that which he receives taken from him by the creditors of the debtor whom he is attempting to defraud, without having any remedy to recover what he parts with in carrying out the bargain.

4. ESTOPPEL: *Vendee and mortgagee.*

   A purchaser of land who assumes to pay a prior mortgage on it as part of the purchase price is estopped to question the validity of the mortgage for any cause.

5. STATUTE OF LIMITATIONS: *In suits for legacies.*

   The rule that the statute of limitations will not bar a suit for a legacy, applies only when the suit is against an executor or another who is charged by the will with an expressed trust in relation to the legacy.

6. SAME: *In equity.*

   The statute of limitations is as binding in equity as at law.

7. SAME: *Legacy charged on land.*

   The acceptance of a devise binds the devisee personally for the payment of a legacy charged upon the devise. But the obligation is an implied one, not in writing, and an action on it is barred by the statute of limitations of three years.

8. SAME: *Tacking disabilities.*

   A married woman cannot tack her coverture to her infancy to avoid the statute of limitations. She must sue within the period allowed by law after coming of age, or be barred, whether married or unmarried.

APPEAL from *Desha* Circuit Court in Chancery.

Hon. JOHN A. WILLIAMS, Circuit Judge.

*W. M. Randolph* for Appellant.

Millington v. Hill, Fontaine & Co.

1.   There is no evidence showing the conveyance by Bolton to be fraudulent, certainly none such as required by the rules in *18 Ark., 123, 138, 141, etc.*

There can be no escape from the proposition that the decree in Galbreath's suit in Tennessee has established the validity of the sale of the land by Seth W. Bolton to Mrs. Millington. *Doe v. Oliver, 2 Smith's Leading Cases, top pp. 787, 788, 795, 796, (6 Am. ed., pp. 667, 668); Edwards v. Stewart, 15 Barbour, 67; Bellinger v. Craigue, 31 Barbour, 534; Stevens v. Miller, 13 Gray, 283; Regina v. Hartington, 4 Ellis & Bl., 788, 794, etc.*

2.   Galbreath is estopped from pursuing the land or denying Mrs. Millington's title to it, because he has collected and had the benefit of the money she paid for it.   *5 Ala. (N. S.), 316; 2 Minn., 291.*

The same principle is decided in *Rennick v. The Bank of Chillicothe, 8 Ohio (Hammond), p. 530; Okie v. Kelly, 12 Penn. St. (2 Jones), 323; Rapalee v. Stewart, 27 N. Y., 310,* and many other cases.

And see generally on the question *Fitch v. Baldwin, 17 Johnson, 161; Rodermund v. Clark, 46 N. Y., 354; Tuite v. Stevens, 98 Mass., 305.*

3.   Mrs. Millington is subrogated to the position of Galbreath to the extent to which she has paid his debt, and upon all the authorities, as her money has gone to pay Galbreath's debt against Bolton, which she never owed, she is entitled to the benefit of this present suit of Galbreath's, and to have her money repaid her out of the proceeds of the sale of the land Galbreath is pursuing.   *2 Brock. (C. C.), 168; 6 Wall., 299; 57 Miss., 548; 66 N. Y., 363; 11 Wis., 380; 55 Cal., 31; 96 Ill., 224.*

4.   The mortgages to Hill, Fontaine & Co., were void for usury in their inception, *41 Ark., 331,* and Mrs. Millington can set up this plea.   *4 Peters, 229, 230; Ib., 205; 35 Ark., 217.*

*L. Leatherman* also for Appellant.

Creditor must show judgment, execution, and return *nulla bona.* *11 Ark., 718; 12 Ark., 387; 18 Ark., 589.*

Simply showing outstanding indebtedness, the insolvency of the debtor, and that he intended to defraud, hinder or delay his creditors, is not sufficient unless it is shown that the purchaser participated in the fraudulent design. *Bump. on Fraud. Con., p. 194; Galbreath, Stewart & Co. v. Cook and wife, 30 Ark., 417; Kelly on Cont. of Married Women, top p. 146.*

The purchaser must knowingly participate with a view of aiding the debtor in his purpose of defrauding his creditors. *41 Ark., 325; Rob. on Fraud. Con., 520, 527; 101 U. S. Rep., 499; 104 U. S. Rep., 77.*

A conveyance is not necessarily fraudulent because its effect is to hinder and delay creditors. It must be made for that purpose, and the grantee must be privy to the fraudulent design. *Splawn v. Martin, 17 Ark., 152; 18 Ark., 123, 124.*

Presumptions and circumstances of fraud are expelled by proof of fair consideration. Fraud is never presumed, but must be proven. Circumstances of mere suspicion leading to no certain result are not sufficient proof of fraud. *Daniel & Straus v. Vaccaro, 41 Ark., 325; Bump. on Fraud. Con., (2d), p. 584.*

Accepting deed by Mrs. Millington from S. W. Bolton does not estop her from setting up usury and any other valid defense against the Carder debt. *30 Ark., 393; 52 Penn. St., 400; Hilliard on Vendors, 55.*

Chancellor erred in sustaining the demurrer to the plea of usury. If usurious, the note of Bolton to Carder is absolutely void under *Constitution of 1874, art. 19, sec. 13. German Bank v. Deshon, 41 Ark., —; 2 Yer. (Tenn.), 350; Ford v. Hancock, 36 Ark., 252; 32 Ark., 362, 365; 3 Johns. Ch. Rep., 206, 9 Id., 197.*

Where part is usurious all is void—the note as well as the trust deed securing it. *Marks v. McGehee, 35 Ark., 217; 56 Barb., 430; 24 Iowa, 441; 2 N. H., 333.* A subsequent security, given for a loan originally usurious, however remote or often renewed, is void. *3 How. (U. S,), 62; 54 Ga., 554; 3 N. Y. (6 Tiff.), 55; 9 Iowa, 354.* If a promissory note be made on a usurious contract, it will be void, even in the hands of a *bona fide* holder for a valuable consideration. *4 Mass., 156; 2 Bag., 23; 8 Conn., 669; 2 N. H., 410.* One agreeing to pay, or give new security for, the usurious note of another, may avoid it for original usury. *35 Barb., 96; 12 Iowa, 364.*

The law of Tennessee does not govern this contract though made in Tennessee. The land is in Arkansas, and the law of this state should prevail. *1 Jones on Mort., 661; 10 Mass., 430, 21; 24 Iowa, 9; 6 Hill, 93; 41 Ark., 419.*

She should be subrogated to the purchase of Galbreath's judgment, or be entitled to assignment of the judgment as a resulting trust, and in either case to have the remainder of the proceeds of the acceptances, over and above the amount paid for Galbreath's judgment, to-wit, $282.60, credited on the Bolton debt to Hill, Fontaine & Co. *15 Am. Dec., 553; 43 Am. Dec., 562.*

Her part of the legacy has not been paid, nor barred by the statute of limitations. She was a minor at the death of her father, the testator; married before she became of lawful age, and is yet married; at no time *sui juris.*

The land stands as a security for the amount paid on it by Mrs. Millington. *3 Coop. Chy., 711; Bump. Fr. Conv., 590; 6 Wall., 299; 18 U. S., 686; 1 Johns. Chy., 478; 3 Ohio St., 246; Rob. on Fr. Con., 520, 527; 3 B. Mon., 50.*

*Bigelow & Hill* for Appellees.

The evidence fully establishes the fact that the conveyance was fraudulent. But it is said, that as matter of law, it must be

shown that the grantee participated in the fraud, or at least knew of the grantor's fraudulent design. We submit to the court—

1. That this question has been distinctly and finally decided by the supreme court of Tennessee, in the case of *Galbreath v. Bolton, Millington, et al.*, and is *res adjudicata*.

2. If, however, the question should be opened to inquiry by this court, we submit that the proof is clear and abundant to show that Wade Millington did have notice of, and did participate in, the fraudulent design of Seth W. Bolton, when she accepted the deed from him.

The conveyance of the land being fraudulent as to creditors, and the fraudulent design having been participated in by the grantee, Mrs. Millington, the creditors so defrauded can follow the land, and the consideration paid where one has been paid, and a court of equity will not aid a fraudulent vendee in recovering back the purchase money any more than a court of law. Equity will only aid such a vendee where there has been no active fraud on his or her part. Galbreath had a right, therefore, to go for both the lands fraudulently conveyed and for the consideration actually paid, until his debt was fully satisfied. *R. R. Co. v. Souter, 13 Wall., 517; Bean v. Smith, 2 Mason, 252, 298; Pettus v. Smith, 4 Rich. Eq., 197; Strike v. McDonald, 2 Har. & G., 191; Strike's case, 1 Bland, 57, 80; Williamson v. Goodwyn, 9 Gratt., 503; Brooks v. Caughran, 3 Head, 464.*

The court properly sustained the demurrer to Mrs. M.'s plea of usury in the debts secured by the mortgages to Hill, F., & Co. The plea of usury is personal, and does not extend to strangers collaterally affected. See *6 Lea, 346, 347; 32 Ark., 346; Nance v. Gregory et al., 6 Lea, 343; Sellers v. Botsford, 11 Mich., 59; Bank v. Rineud, 1 Mich., 84; Spaulding v. Davis, 51 Vt., 79; Conover v. Hobart, 24 N. J. Eq., 120; Bridge v. Hof-*

*fard, 15 Mass., 103; Reading v. Weston, 7 Conn., 413; Stephens v. Munn, 8 Ind., 352; Pickett v. The N. Bank, 32 Ark., 346.*

The legacy was a bequest upon a condition subsequent, and the right of action for the money was in the executor and not in the persons to whom this money was to be distributed under the will.

Any suit is barred by the statute of limitations, as appears upon the face of the cross-bill.

The devise of the land and acceptance by the devisee, upon condition that he pay a stipulated sum, creates a personal liability on the part of the devisee, upon which an action at law can be maintained without an express promise. *Gridley v. Gridley, 24 N. Y., 130; Spraker v. Van Alstine, 18 Wend., 200; McLochlan v. McLochlan, 9 Page, 534; Lord v. Lord, 22 Conn., 595; Parish v. Whitney, 3 Gray, 516; Redf. on Wills, part 2, p. 686, sec. 50.* This sort of devise does not create any charge on the land.

COCKRILL, C. J.   This appeal grows out of the successful effort of certain judgment and mortgage creditors of Seth W. Bolton to subject a plantation in Desha county, which he had conveyed to his sister, Mrs. Millington, to the payment of their respective claims.   The suit was begun by a creditor's bill filed by W. B. Galbreath, a judgment creditor, to which the other judgment and mortgage creditors, Mrs. Millington and her husband, and the administrator of S. W. Bolton, were made parties.   Cross-bills were filed by the defendant creditors to settle the priorities of their liens, and by Mrs. Millington to assert the priority over all, of her claims.   The plantation was unoccupied and not in cultivation when the bill was filed, and a receiver was appointed by the court to lease the place and collect the rents.   Upon the hearing, the court found that Mrs. Millington's purchase was a fraud upon the rights of Bolton's creditors, marshalled the liens, made a distribution of the fund

raised by the receiver, and condemned the lands to be sold to pay off the residue of the claims charged against them. Mrs. Millington and her husband alone appeal.

The history of the transactions connected with the purchase of the plantation, is as follows:

In 1876, Seth W. Bolton resided in Desha county, and was the owner of the plantation in dispute. He was, at that time, indebted beyond his ability to pay. One or more judgments had been rendered, and two actions for the recovery of money were pending, against him. One of these was Galbreath's, to collect a debt of something more than $5000, to which there was no defense. Bolton expressed a willingness to secure this debt, if security was insisted upon; and, at this juncture, left home with the avowed object of conferring with Galbreath about the security and the extension of the time of payment of the debt; but, instead of calling upon Galbreath, he went direct to the home of his sister, Mrs. Millington, the appellant here, in Shelby county, Tennessee, and there, upon a Sabbath night, and with much haste, considering the importance of the transaction, concluded a sale of the place to her. The trade was consummated the next morning by the delivery of a deed reciting a consideration of $10,000. The consideration consisted of an agreement by Mrs. Millington to discharge certain notes held by Hill, Fontaine & Co., amounting, as the deed recited, and the parties agreed, to about $6000, and secured by two mortgages on the plantation, reference being made in the deed to the records of Desha county to identify them; and for the residue of the purchase price and as a cash payment of $4000, Mrs. Millington transferred to Bolton two bills of exchange, drawn by E. M. Apperson upon and accepted by E. M. Apperson & Co., for $2000 each.

Within a few days after this transaction these two bills gave rise to a litigation in the Tennessee courts between Galbreath, Bolton and Mrs. Millington, which has an important bearing

upon the litigation between the same parties here. It arose in this way. Galbreath sued Bolton, in Memphis, for the recovery of the debt already in suit in Arkansas, and impounded the two bills of exchange by causing an attachment to be levied upon them as Bolton's property. Mrs. Millington intervened in this proceeding, claimed the bills as her own, and undertook to show that soon after transferring them to Bolton, she purchased back one of them for $1600 in gold, and that the other was re-transferred to her as indemnity against a further lien that her husband and brother upon further consideration supposed might be established against the land. Galbreath answered that the re-transfer of the bills to Mrs. Millington was fictitious, and part of a general scheme entered into between Bolton and his sister to cheat, hinder and delay the creditors of the brother; the first step in the scheme, being, as he alleged, the purchase of the plantation. Upon this issue a mass of testimony was taken, and the chancellor before whom the cause was heard, found that the whole transaction was concocted in fraud, and by appropriate decree subjected the proceeds of the bills of exchange, which had in the meantime been collected, to the satisfaction *pro tanto* of Galbreath's debt. Mrs. Millington prosecuted an appeal from this decree to the supreme court of Tennessee, where the testimony was reviewed, the facts carefully collated, and the chancellor's conclusions indorsed in strong and unequivocal language by the supreme court commission, and the decree remained undisturbed. It was after the determination of that suit that Galbreath filed the bill that gives rise to this appeal. A transcript of the entire Tennessee record found its way by common consent into this litigation, and is submitted to our consideration.

Counsel who represent the Galbreath interest here, argue that the Tennessee decree renders the question of fraud in the purchase made by Mrs. Millington *res adjudicata*, so far at least as Galbreath is concerned; but the effect of Galbreath's proceeding in Tennessee precludes him from inquiring into the question of

fraud, and so ends his litigation here *in limine*. He had charged in his answer to Mrs. Millington's assertion of title to the two bills of exchange in the Tennessee suit, that the purchase of the lands was a fraud on his rights as a creditor of Bolton. Thereupon Mrs. Millington, while denying the fraud, offered to re-convey the lands to Bolton, and permit Galbreath to subject them to the payment of his debt if he would release the bills of exchange from the levy of his attachment. Galbreath declined this, prosecuted his attachment and reaped the benefit of the land sale by appropriating the consideration he alleged was paid for it. The acceptance of the benefit arising to him from the transaction, with knowledge of the surrounding facts, estops him from afterwards questioning the sale.

A conveyance to defraud creditors is good as between the parties and their privies, although it may be avoided by the creditors of the fraudulent grantor. If the creditors condone the fraud, the grantee's title is good against all comers, and when any creditor, with knowledge of the wrong that has been done him, makes his election to take from the grantee the purchase price agreed to be paid for the land, his conduct is, in effect, an affirmance of the sale and a waiver of the right to complain of the fraud. *Lemay v. Bibeau, 2 Minn., 291; Hathaway v. Brown, 22 Ib., 214; Butler v. O'Brien, 5 Ala. (N. S.), 316; Rennick v. Bank of Chillicothe, 8 Ohio, 529; Frierson v. Branch, 30 Ark., 453; Pickett v. Merchants Nat. Bank, 32 Ib., 346.*

*1. FRAUDULENT CONVEYANCE:— How far good.*

*2. When creditor estopped.*

There is nothing in the record, however, to debar the other judgment creditors from asserting their claims against the land. But it is argued on behalf of Mrs. Millington, that however fraudulent the intent of her brother may have been in effecting the sale to her, there is nothing to show that she participated in his design or knew of his embarrassed affairs.

Without recounting the facts and suspicious circumstances surrounding the transactions, the *bona fides* of which has been

questioned in these litigations, it must suffice to say we have weighed them carefully, and cannot escape the conclusion arrived at by the Tennessee supreme court commission in the opinion that has been furnished us, reviewing the same testimony that the case is submitted to us upon almost without variation. It is true that the fact at issue in that case was as to the *bona fides* of the transfer of the bills of exchange by Bolton to Mrs. Millington, but the negotiation for the purchase of the land was unearthed with great detail of circumstance, and the good faith of that transaction was considered by the Tennessee court, under the familiar rule that it is competent in this class of cases to show other conveyances than the one attacked to be fraudulent if made about the same time and as a part of the same scheme of fraud. It is upon the same principle that we now weigh and consider the fraudulent attempt of Bolton and Mrs. Millington to place the bills of exchange given as part of the pretended purchase price of the land beyond the reach of Bolton's creditors, the question really decided in the Tennessee case. While the Tennessee decision is not binding upon us, we concur in the conclusion reached, that both transactions are of a piece and fraudulent.

**3. Fraudulent grantee without remedy.**      It is also urged that Mrs. Millington's money having been appropriated by Galbreath, a creditor of her vendor, to the payment of his debt, the land should not now be taken to satisfy debts that were not liens at the date of her purchase; or, that if it is condemned to pay these debts, she should be allowed to share in the assets as the equitable assignee of the extinguished demand.

It is not true, in the outset, that Mrs. Millington's money has been taken in satisfaction of her vendor's debt. The decree in the suit between her, her vendor and his creditor settled the question that the money was her vendor's. It became his by virtue of her purchase of the lands, and she became the owner of the lands; but, by virtue of the fraud that entered

into the purchase, it was subject to the incumbrance of the debts then existing against her vendor. The largest of his creditors sought to, and did, discharge his debt out of the purchase money she paid for the land and relieved the land to that extent.

On the other hand, we do not deny the principle that where a person pays money for which another is liable, equity will clothe his claim with the garb the contract he has discharged was invested with, but it is never applied in aid of a fraud. It is a maxim that "he that hath committed iniquity shall not have equity," and in accordance with it, it is the settled rule that "a party bargaining with a debtor with fraudulent intent, does it at the peril of having that which he receives taken from him by the creditors of the debtor whom he is attempting to defraud, without having any remedy to recover what he parts with in carrying out the bargain." *Waite Fr. Conv.*, sec. *192; Railroad v. Soutter, 13 Wall., 517; Pettus v. Smith, 4 Rich. Eq. (S. C.), 197.* Mrs. Millington must be left in the snare her own devices have laid.

As a further means of ridding the land of Bolton's debts, Mrs. Millington attacked the validity of the lien of the mortgages already mentioned, upon the ground, as her answer to Hill, Fontaine & Co.'s cross-bill alleged, that the debts they secured were usurious in their inception. A demurrer to the answer was sustained. It is clear that Mrs. Millington was not prejudiced by this ruling.

The mortgages had been executed by Bolton before his conveyance to her, and she had not only purchased subject to the mortgage liens, but had assumed to discharge the mortgage debts to the amount of $6000, as part of the purchase price to be paid by her. Subjecting the lands to the payment of this amount was thus made the mode for the payment of that much of the purchase price. Six thousand dollars of the purchase money, it was agreed should be paid to the parties holding the

4. Estoppel: Vendee and mortgagee.

mortgage notes. A payment upon these notes would be a discharge *pro tanto* of the purchase money. Bolton thus provided the means with which to pay this $6000, and placed it in Mrs. Millington's hands for that purpose. It is not a matter that concerns her whether the mortgages are void, the debts fictitious, or not. Bolton directed in his deed to whom the purchase money yet due for the land, should be paid, and it is not for his vendee to gainsay him the right to do so. To permit her to hold the lands and repudiate the mortgages, would be to give her the land without exacting the purchase price. If nothing is really due upon the mortgage debts, that fact would enure to the benefit, not of Mrs. Millington, but of Bolton's creditors. *Freeman v. Ault, 44 N. Y., 50; Cramer v. Lepper, 26 Ohio St., 59; Hough v. Horsey, 36 Md., 181; Pickett v. Merchant's Nat. Bank, 32 Ark., 346.*

Bolton's administrator was a party to the litigation, made the same defenses that Mrs. Millington attempted, was defeated upon the merits, and declines to appeal.

When the cause had progressed almost to a hearing, Mrs. Millington filed a cross-bill in which she asserted claim to a one-fourth interest in a legacy of $15,000 bequeathed to her and three others by her father, which she alleged was a charge upon the property in dispute, and which she prayed should be declared a lien in her favor superior to all others. Her father, it was alleged, died in 1863, and although, according to her allegations, Bolton had shortly afterwards accepted the devise of land subject to the charge, this is the first intimation, among all the dealings and transactions between the parties detailed in the record, that this charge was still unsettled. Mrs. Millington, her husband and Bolton, all testified in the Tennessee case, detailing with minuteness the conversations had in the negotiations for the purchase of the land, and no claim was made for any reduction of price on account of this charge, although it was asserted that the consideration agreed upon was

a fair price for the lands. And Mrs. Millington herself testified that she had no information of *any indebtedness* on the part of her brother. It was now alleged however, that her interest in this legacy was a part of the consideration paid by her for the lands.

The allegations of the cross-bill deepen our conviction that the purchase of the land was not in good faith. However, a demurrer to the cross-bill was sustained, and it must be met upon its merits.

Without saying anything as to the allegations that the release of the legacy was a part consideration of the purchase which we find to have been fraudulent, or as to the necessity of bringing in the co-legatees as parties, we may rest the correctness of the chancellor's action in dismissing the cross-bill upon the fact that it shows upon its face that the legacy was barred by the statute of limitations.

It has been held in England and in this country that the statute of limitations is no bar to a suit to recover a legacy, (see note to *Hedges v. Norris, 32 N. J. Eq., 192,*) but with us this is true only where the suit is against an executor or another, who is charged by the will with an expressed trust in relation to the legacy. The fact that the suit is in equity avails nothing, for the statute where applicable at all is as binding in equity as at law. *McGaughey v. Brown, 46 Ark., 25.* In seeking for the statutory rule that shall govern in such a case, it is necessary to ascertain the legal effect of the devise and consider what are the nearest analogies to it, for there is no statute which in terms bars a legacy. [5. Statute of Limitations in suits for legacies.] [6. Same in equity as at law.]

The provision of the will of I. L. Bolton under which the appellant claims is as follows:

"I give to my son, Seth W. Bolton, my entire interest, both real and personal, in Desha county, Arkansas, by his paying to my estate, or other heirs, the $15,000 I have paid for the places."

7. SAME:—
Legacy charged
on land.

Seth Bolton accepted the devise and in doing so, he by implication agreed to pay the sum given to the other heirs. *Williams v. Nichol, ante, p. 254.* While the will makes it incumbent upon him to pay the legacy, it does not devolve upon him such duties and obligations as create a direct trust and prevent the statute of limitations from running in his favor. His agreement to pay is an implied contract and not in writing, and is therefore within the letter of the three years statute. *Etter v. Greaawalt, 98 Pa. St., 422.*

But the $15,000 also became a charge under the will upon the land itself, and it is this equitable lien the appellant seeks to enforce. The question is, what statute applies? We can not adopt the analogy that governs suits on mortgages because a mortgage is the conveyance of the legal estate and gives the mortgagee his action for the possession of the mortgaged premises, while the equitable charge created by the will gives no right of possession. It is more nearly allied to the mortgage in those states where the latter is recognized as a security only and as conveying no title. But as the testator evidently intended that Seth Bolton should take the estate only upon paying so much of a consideration for it, we may infer from this that the payment of the legacy was in part at least the consideration of the devise, and from this we derive a strong support for the analogy to the vendor's equitable lien for the unpaid purchase money.

Now, in those jurisdictions where the mortgage conveys no title, the lien is regarded as an incident to the debt merely, and is barred when the debt can no longer be enforced, and the same rule is applied by this court to the equitable vendor's lien. *Stephens v. Shannon, 43 Ark., 464; Waddell v. Carlock, 41 Ib., 523.* And this rule is held to govern the equitable charge of a legacy in the only case in point that has come to our notice. *Yearly v. Long, 40 Ohio St., 27.* There it is held that the personal remedy against the devisee being barred the lien was discharged.

Millington v. Hill, Fontaine & Co.

But whatever statute governs, the remedy in this case is barred, for the statute was set in motion in 1863, and if the charge could be regarded as a liability created by "a writing under seal" (as to which see *Wait v. Carniten, 21 W. Va., 516; Prewett v. Wortham, 79 Ky., 287; Borst v. Corey, 15 N. Y., 505*), and the suit an action to enforce it (*Sec. 4484, Mansf. Dig.*), still, more than ten years have elapsed.

Mrs. Millington undertook to evade the force of the statute by alleging that she was under age in 1863, and afterwards married and is still covert, but she cannot tack her disabilities in this way. She should have brought her suit within the period allowed her by the statute after coming of age, notwithstanding her coverture.

8. SAME:— Tacking disabilities.

The only error in the record is as to the Galbreath judgment, and the decree must be reversed with instructions to modify it by disallowing that claim, and it is so ordered.

SUPPLEMENTAL OPINION ON MOTION FOR REHEARING BY APPELLANT.

COCKRILL, C. J. In an application for a rehearing, our attention is directed, for the first time, notwithstanding the elaborate oral and printed arguments, to the fact that the decree condemns the land to be sold on a credit of twelve months, a period longer than is authorized by statute. The record does not show that the decree has been executed, and if a sale takes place after the mandate it may be apprehended that the order of sale is approved as to the credit to be given. It is proper to notice this error to prevent misapprehension.

Also an allowance to B. F. Grace, as administrator of the estate of Seth W. Bolton, to pay expenses of administration, was improper and must be disallowed on the rendition of the new decree.

The decree of this court will be modified in accordance with these directions.