## BANK OF CHELSEA v. ELAM et al.

No. 21988.   March 20, 1934.

Rehearing Denied April 10, 1934.

H. P. Daugherty and Wilkerson & Brown, for plaintiff in error.

A. Lee Battenfield, for defendants in error.

PER CURIAM. 1. Facts stated: On May 20, 1929, the defendants J. T. Elam and Lillie Elam, his wife, executed a promissory note for $3,192, payable to the Bank of Chelsea on August 8, 1929. On the same date, the defendants executed another note for $2,000, payable to the Bank of Chelsea on August 8, 1929. Both of the notes were secured by chattel mortgages and a mortgage on some real estate. The $2,000 note was also secured by a real estate mortgage on the homestead of the defendants.

After the execution of the notes, Lillie Elam received $500 from her deceased mother's estate, and paid the amount to the plaintiff bank, with directions to apply the payment to the credit of the $2,000 note secured by mortgage on her home.

Neither of the notes was paid at maturity, and on August 21, 1929, while the defendants were indebted to the plaintiff bank, the defendant Lillie Elam conveyed by deed and bill of sale her undivided one-eighth interest in her deceased father's estate to Fred W. Garland, her brother, for a recited consideration of $2,000, which was not paid to her until in November, 1929, after this action was begun in the district court. Five hundred dollars of the consideration consisted of a pair of mules, a wagon and harness, and $1,500 was paid to Lillie Elam by Fred W. Garland in cash. When the defendant Lillie Elam received the $1,500 in cash from her brother, she went to the bank and paid the same to the bank, with directions that it be credited on the $2,000 note, secured by mortgage on her home. At the time she paid the $1,500 to the bank, Fred W. Garland, her brother, was present in the bank and knew that she paid said amount to the bank, with directions to credit the amount on the $2,000 note. At the time the bank received the payment of $1,500, it had information and knew that the $1,500 had been paid by Fred W. Garland to his sister, Lillie Elam, for her interest in her father's estate. Lillie Elam and her husband had on one or two occasions talked to the president of the bank, and had told him that they wanted to sell their interest in the estate of Lillie Elam's father and pay the debt secured by the mortgage on their home, and at one time they had offered or talked about selling the interest to the bank.

The petition in this case was filed in the district court on October 8, 1929, and declared on four causes of action: First, on the $3,192 note; second, on the $2,000 note for the balance due; third, for foreclosure of the chattel mortgage given to secure both notes; fourth, to set aside the deed from Lillie Elam to her brother, Fred W. Garland, conveying her interest in her father's estate as having been made without a fair and valuable consideration passing from Fred W. Garland to his sister, Lillie Elam, and as having been made in fraud of creditors, especially the plaintiff bank.

2. There is some conflict in the testimony on some material points therein. Some of the things testified to by the president of the bank and others, who worked in the bank at the time, are denied by the defendants in their testimony, but it would serve no good purpose to lengthen this opinion by setting out at length the testimony of each of the witnesses and attempting to show which testified truthfully. The trial court heard the witnesses and saw their demeanor on the stand, and is better able to weigh their testimony and determine the facts from the testimony than we who read the record.

There is some testimony in the record tending to show that the property conveyed by Lillie Elam to her brother was worth from $3,000 to $3,500, but the estate was undivided, and it would probably take some time to distribute it among the heirs. The defendants were anxious to secure the money from the estate in order to pay the mortgage

on their home. The mortgage was due and they were being pressed for a payment. They also were in need of a team and a wagon to begin their farm operations, and under those circumstances they could afford to take less for the property than they could if they had been in better financial circumstances, and, under this state of the record, we are of the opinion that the testimony is not sufficient to show that Lillie Elam did not receive a fair and valuable consideration for her interest in her father's estate, and that the testimony is sufficient to support the general findings of the trial court to the effect that the conveyance was for a fair and valuable consideration.

3. The bank received the $1,500 paid by Fred W. Garland to his sister, Lillie Elam, knowing at the time that it was the consideration received from Fred W. Garland for Lillie Elam's interest in her father's estate. They did not in the pleadings, nor during the trial, offer to return to Fred W. Garland the $1,500, or any part of it, and having failed to offer to do equity, we do not think they are in a position to have Fred W. Garland's deed canceled. The bank cannot hold on to the money received and at the same time take from Fred W. Garland the property for which he paid the money to his sister.

In 27 C. J., p. 482, par. 132, it is said:

"While there is some authority to the contrary, the general rule is that a creditor who, with knowledge of the transaction, receives a benefit under a conveyance, fraudulent as to creditors, thereby elects to affirm it, and is estopped from questioning its validity, at least so long as he retains the benefit."

And in a note applying the rule quoted above, the author cites the case of Millington v. Hill, 47 Ark. 301, 1 S. W. 547, where it is said:

"Where, after a conveyance to defraud creditors, a creditor elects to take from the grantee the agreed price for the land, he affirms the conveyance."

We think that where, after a conveyance to defraud creditors, a creditor elects to take from the debtor a substantial part of the consideration received by the debtor from a third person to whom the property was conveyed in payment of a secured claim, knowing at the time that the money received by him was paid to the debtor by the person to whom the debtor conveyed the property as the consideration for the conveyance, the creditor elects to confirm the conveyance claimed to have been made in fraud of creditors, and is estopped to set aside the conveyance, at least so long as the creditor retains the money which he received from the debtor, knowing it to have been paid by the third person to the debtor as the consideration for the conveyance.

4. It is urged by the plaintiff in error that the defendants, having failed to plead estoppel, cannot urge that the bank is estopped, because it knowingly received the $1,500 paid by Fred W. Garland to his sister, Lillie Elam, for her interest in the land. The answer of the defendants pleads that the defendants went to the president of the bank and told him they were going to sell the property and apply the proceeds to their indebtedness to the bank in payment of the note secured by mortgage on their home, and that the president of the bank agreed to such sale.

In 21 C. J., page 1248, par. 260, it is said:

"It is a rule of general application that if the allegations amount to an estoppel, it is sufficient, although the estoppel is not pleaded in so many words, or specifically designated as such, especially where no objection is made to the form of the pleading. Mere informality in the pleading will not deprive the pleader of the benefit of the estoppel so long as the facts are sufficiently pleaded."

In Jones v. S. H. Kress & Co., 54 Okla. 194, 153 P. 655, it is said:

"It is not always necessary to plead estoppel in haec verba, because where the facts pleaded entitle a party to a certain relief, the pleadings are sufficient as a plea of estoppel, without a specific designation of it as such. A party entitled to an estoppel need not in all cases formally plead the estoppel. If the facts constituting the estoppel are in any way sufficiently pleaded, he is entitled to the benefit of the law arising therefrom. City Nat. Bank v. Thomas, 46 Neb. 861, 65 N. W. 895."

It is not so much a question of pleading in this case as it is a question of applying the rule of equity that "he who seeks equity must do equity," and when it was shown in the trial of the case that the bank had received the money, knowing that it was paid by Fred W. Garland to Lillie Elam for her interest in her father's estate, and the bank had not and did not offer to return the $1,500 to Fred W. Garland, the trial court, as a court of equity, had a right to leave the parties where he found them, and in this we think the trial court did not err.

5. It is contended by the plaintiff in error that because Lillie Elam paid the $1,500 to the bank and secured the release of the

mortgage on her homestead, which was exempt property, that such act constitutes fraud on the bank and the deed should be canceled. She had the right under the law to prefer one creditor over another, or to pay one debt in preference to another, and to pay a secured debt in preference to an unsecured debt. D'Yarmett v. Cobe, 51 Okla. 113, 151 P. 589; Carson v. Cook County Liquor Co., 37 Okla. 12, 130 P. 303.

If Lillie Elam had the right under the law to pay a secured debt in preference to an unsecured debt, then such action on her part would not make her guilty of fraud. A person could not be guilty of fraud for doing that which he had a legal and moral right to do.

6. It is well settled rule in this jurisdiction that, in an equitable action, the Supreme Court will weigh the evidence and will affirm the trial court unless the decree of the trial court is clearly against the weight of the evidence. We have carefully examined the evidence in this case, and we are of the opinion that the general findings of the trial court are not against the clear weight of the evidence. On the other hand, if the trial court believed the witnesses who testified for the defendants, the decree of the trial court is supported by the evidence, and the weight of the evidence preponderates in favor of the defendants.

For the reasons herein stated, we recommend that the judgment and decree of the trial court be affirmed.

The Supreme Court acknowledges the aid of District Judge Geo. Arnett, who assisted in the preparation of this opinion. The District Judge's analysis of law and facts was assigned to a Justice of this court for examination and report. Thereafter the opinion, as modified, was adopted by the court.