ARCHER et ux. v. OSAGE FEDERAL SAV. & LOAN ASS'N.

No. 29864. Feb. 11, 1941.

Rehearing Denied March 4, 1941.

Application for Leave to File Second Petition for Rehearing Denied April 23, 1941.

*112 P. 2d 162.*

Morse Garrett, of Tulsa, for plaintiffs in error.

Hamilton & Kane, of Pawhuska, and A. E. Montgomery, of Tulsa, for defendant in error.

BAYLESS, J. This is an appeal from the district court of Tulsa county from a judgment in favor of Osage Federal Savings & Loan Association of Pawhuska, a corporation, foreclosing a real estate mortgage against T. Jeff Archer and Vera M. Archer.

Defendants purchased the real estate, which they made their statutory homestead, from plaintiff, and gave plaintiff a note and mortgage for $3,000 payable at the rate of $35 per month. Within the year Archer applied to the plaintiff for an additional loan of $600 to be used in connection with the protection and preservation of the property. Plaintiff decided to make this additional loan and instructed its agent at Tulsa to advise Archer thereof and the terms and conditions thereof. The agent testified that he communicated this message to Archer verbally, and when Archer signified his acceptance plaintiff sent a note and supplemental loan agreement, which Archer and wife executed and returned to plaintiff, whereupon the $600 was paid to Archer. Thereafter the $35 monthly payments made · by Archer were applied by plaintiff as follows: (1) To the payment of the interest on the $3,000; (2) to the payment of the interest on the $600 note; and (3) to the payment of the principal of the $600 note. Sufficient monthly payments were made by Archer, when applied as aforesaid, to keep the interest paid on the $3,000 note and to retire the $600 note. Thereafter the plaintiff filed the action from which this appeal arises, alleging default in the payment of the $3,000 note, which action the defendants resisted by denying the right of the plaintiff to divert any of

the monthly payments to the payment of the $600 loan, and by asserting that there was no delinquency in the $3,000 note, and by asserting that the oral agreement for the diversion of the payments was invalid because of the homestead rights of the defendants.

Defendants make several assignments of error, which naturally group themselves into three groups. The first relates to the law of payment and involves both questions of law and issues of fact. The second relates to the rights of the defendants in respect to their statutory homestead. The third relates to an alleged abuse of discretion with respect to the theory upon which the judgment was rendered as embodied in the journal entry.

We now direct our attention to the first proposition. We do not believe there is any difference between the parties respecting the basic law relating to the application of payments. We believe their differences respecting the evidence and the weight thereof have led them to contend for differing applications of the law of payment. The defendants contend that the debtor has the power to direct the application of money paid to a particular debt in preference to other debts, and that once having given directions for the application of payments, the creditor has no right to divert payments thereafter made to another debt. As a basic rule of law we think this is correct. Bank of Chelsea v. Elam, 167 Okla. 650, 30 P. 2d 919, and other cases. We do not understand that the plaintiff differs with this rule of law, but that it contends that directions once given for the application of payments in a certain manner may be thereafter altered or modified, and that the evidence in this case shows, and sustains the court's judgment to that effect, that defendants later modified the directions to provide for the application of the payments thereafter to be made in another manner. The record shows that when the $3,000 note and mortgage were executed it was the agreement of the parties that the $35 paid monthly should be applied (1) to the payment of the interest, and (2) the remainder of the $35 to be applied to the principal of the $3,000 note. The plaintiff's evidence is that when its agent verbally notified Archer that plaintiff was willing to lend him the $600, the agent told Archer that no additional sum should be paid each month, but that the $35 per month then provided to be paid should be applied (1) to the payment of the interest on the $3,000 note; (2) to the payment of the interest on the $600 note; and (3) the remainder of the $35 to be applied to the payment of the principal of the $600 note; and that the principal of the $3,000 note would remain in abeyance until the $600 note was paid. Nothing appears in the $600 note to this effect, the $600 note simply providing for monthly payments of $35 per month. Archer did not deny the making of this oral agreement respecting the application of the $35, but simply said he did not recall it. We think the trial court's finding in favor of the plaintiff amounts to a finding from this evidence that the oral agreement with respect to the application of the monthly payment as last outlined was made. Defendants contend that such a finding is contrary to the weight of the evidence, but we do not agree. Defendants also contend that such a finding is contrary to law in that it permits the written agreement for the liquidation of the $3,000 loan to be superseded by a subsequent oral agreement; and that even if there was such an oral agreement, and not being embodied therein, it is superseded thereby and had no valid existence after the execution of those two writings. Neither party cites authorities on this precise point. The general rule as stated in 21 R.C.L. 93, § 97, and 48 C. J. 647, § 92, is that the parties may by mutual agreement change the agreement previously made. In the text cited and the authorities discussed in the annotations thereunder, no consideration seems to be given to whether the original agreement for application was in writing and could or could not be altered by a subsequent agreement or direction that is verbal. Since the rule that permits

the debtor to direct the application of funds paid by him to his creditor to the debt he prefers to pay first, with certain exceptions not material here, is for the benefit of the debtor, we do not think of any good reason that would preclude the debtor from altering that direction at any time thereafter. It will be presumed that his subsequent oral directions contrary to his previous written directions are for his best interests as he conceives them, and this is sufficient. In respect to the written direction for the application of the monthly payments, found in the $3,000 note and mortgage, we must hold that it was subject to being modified or altered by a subsequent oral agreement that was fully executed. Section 9502, O. S. 1931, 15 O. S. A. § 237, and numerous decisions of this court cited in the annotations thereunder. We do not see that the oral agreement with respect to the application of the monthly payments alters or varies the terms of the $600 note, because by its terms it provided that $35 per month should be paid, and this when considered in connection with the $3,000 note placed defendants in the position of being obligated to make two $35 monthly payments. It is clear from the record that defendants did not make two such payments each month, and if they desire to contend now that the oral agreement for the application of this one $35 monthly payment in any wise altered the agreement expressed in the $600 note and supplemental loan agreement, they do not point out to us where there is any such effect. In fact, their whole argument denies the existence of the oral agreement as a matter of fact, and denies its valid legal existence because of its effect upon the $3,000 note. We therefore hold that the oral agreement, found to exist by the court, did not affect the $600 note and supplemental loan agreement.

What we have said in the preceding paragraph relates almost wholly to the defendant husband. We find the law to be that the debtor's wife, even though she joins in the execution of the note and mortgage, has no control over the right and power of the husband to direct the application of his money or funds to the payment of his debts. 39 Am. Dig. (West) Cent. Ed., Payment, § 129, and Dec. Dig., Payment, Key No. 47 (3); and Frazier v. Lanahan, 71 Md. 131, 17 A. 940, 17 A. S. R. 516; Greig v. Smith, 29 S. C. 426, 7 S. E. 610; Bertschy v. Bank, 89 Wis. 473, 61 N. W. 1115; 48 C. J. 663 § 123, 21 R. C. L. 107 §§ 114 et seq. There are exceptions to this general rule where it is made to appear that the wife furnished the money, or where the money came from a fund or source which the wife helped to create or to pledge to the security of the debt involved. In this record we do not find that the defendant wife contends that she furnished the money or that the money came from a source which she had the right to control. Insofar as the record is concerned, it appears that it was the husband's money that was paid each month, and being such, the husband had the full right and power of direction of its application.

The wife does contend, and the husband also, that the lien created to secure the $3,000 loan was upon their homestead, and the direction for the application of the money thereon, being in effect a written agreement executed by the husband and wife, was legal within the purview of our Constitution and statutes; but that the alleged oral directions for application, and the agreement creating it, being executed by the husband only, were wholly invalid within the purview of our Constitution and statutes relating to the homestead. No authorities on this precise point are cited, and we find none. There are authorities to the effect that where a payment has been made by one spouse and applied to the reduction of the lien on the homestead, it cannot thereafter be rescinded and reapplied to some other debt of one spouse without the consent of the other. 41 C. J. 792, § 911, and note citing Brockschmidt v. Hagebusch, 72 Ill. 562, and other cases. Further than this the authorities do not go, and no good reason is cited to us why it should go further under a record such as is before us. As pointed

out before, the record indicates that the monthly payments made were made with the husband's money, and no showing is made nor claim made that the wife contributed or was entitled to control any part of the monthly payments made by the husband. In this situation we are unable to agree with the wife's contention that the oral agreement between the husband and the plaintiff respecting the application of the monthly payments to the $600 note affected the constitutional or statutory homestead rights of either spouse.

We now consider the defendants' argument relating to the abuse of discretion in signing and settling the journal entry of judgment. Briefly, defendants contend that the trial judge announced judgment for plaintiff at the close of the trial in October on a stated theory, and later in November, when the motion for new trial had been overruled, the trial judge rendered judgment for plaintiff on another and different theory, and a theory not supported by evidence. The record discloses that at the close of the trial the trial judge heard argument by counsel, but this argument is not in the record. Then follows a recital, "judgment entered, as shown by the minutes of the court clerk." These minutes are not in the record. The argument and discussion of November 7th is in the record, and from it we gather that the trial judge stated, in effect, that some of the things theretofore presented in the matter were clearer in his mind, and that he now saw that judgment could be rendered for plaintiff on one or more issues that he had not been certain about theretofore, but that, all in all, he was deciding to sign the journal entry of judgment because he believed it correctly stated what was and should be done. We are unable to agree with defendants' contention that there is no evidence to sustain the judgment as rendered, for our examination of the record shows there is. We are unable to pass upon the issue of whether the trial judge rendered judgment earlier upon a theory that was not tenable, or changed his mind with respect to

the basis of plaintiff's judgment, for there is nothing of the earlier proceedings in the record, as pointed out, upon which we could base comparison. The journal entry of judgment in the record states factual and legal grounds for judgment in favor of plaintiff and against defendants, and it must be taken as true until otherwise impeached by the record, and there is evidence in the record to sustain the general findings therein. We therefore conclude that defendants have not sustained the contention in this respect.

The judgment of the trial court is affirmed.

CORN, V. C. J., and RILEY, GIBSON, and HURST, JJ., concur.