CITY NATIONAL BANK OF HASTINGS V. JOSEPH THOMAS, TRUSTEE.

FILED JANUARY 21, 1896.   No. 8050.

1. **Bill of Exceptions.** When a bill of exceptions has been quashed it cannot be afterwards considered for any purpose in the case. *Jones v. Wolfe*, 42 Neb., 272, followed.

2. **Review Without Bill of Exceptions: INSTRUCTIONS.** In reviewing a judgment on petition in error without a bill of exceptions this court is necessarily confined in an examination of instructions to an inquiry whether the instructions given could under any circumstances be properly given under the pleadings. The refusal of instructions cannot be reviewed.

3. **Instructions: HARMLESS ERROR.** The repetition of a proposition of law in the court's charge is not reversible error unless

it be made to appear that the defeated party was prejudiced thereby.

4. **Estoppel**: PLEADING. A party entitled to an estoppel need not in all cases formally plead the estoppel. If the facts constituting the estoppel are in any way sufficiently pleaded, he is entitled to the benefit of the law arising therefrom.

5. **Negotiable Instruments**: POSSESSION: EVIDENCE. Possession of instruments negotiable by delivery is *prima facie* evidence of ownership.

6. **Banks and Banking**: GUARANTY BY PRESIDENT: NEGOTIABLE INSTRUMENTS. A person purchasing negotiable paper from the president of a bank, with a guaranty of payment executed by the president, is justified in relying on the president's representation that the paper belonged to the bank, and the bank is bound by his representation to that effect, at least where the transaction occurred in the banking house, and while the president was apparently engaged in performing his duties as such officer.

7. **Instructions**: REVIEW. Certain instructions examined, and *held* not erroneous as applied to the case under consideration.

ERROR from the district court of Adams county. Tried below before BEALL, J.

*M. A. Hartigan,* for plaintiff in error.

*Capps & Stevens, contra.*

IRVINE, C.

This case was before the court in 1894 and the judgment of the district court therein was reversed. (*Thomas v. City Nat. Bank of Hastings,* 40 Neb., 501.) On a new trial in the district court there was a verdict followed by judgment for the plaintiff. This judgment the bank seeks to reverse. The former report of the case contains a sufficient statement of the facts, except, perhaps, as to some minor features which will be mentioned in the course of the opinion.

The report contains what purports to be a bill of exceptions; but this was, on motion of Thomas, quashed at the

last term of court. The bank contends that, notwithstanding this order, on the authority of *Scott v. Waldeck*, 11 Neb., 525, and *City of Seward v. Klenk*, 27 Neb., 615, and 30 Neb., 775, we may still look into this bill of exceptions for the purpose of ascertaining whether the verdict is supported by the evidence. Such a practice is, however, contrary to reason, and has for a long time been rejected by this court. The case of *Jones v. Wolfe*, 42 Neb., 272, distinctly disapproves of the rule stated in the cases cited, and must be taken as definitively establishing the doctrine that when a bill of exceptions has been quashed it can be no further considered for any purpose. There being now no bill of exceptions, none of the assignments of error is open for consideration, which, for examination, requires the existence of such a bill. The petition in error contains no assignments other than these, except those relating to the instructions. Of these it is obvious that we cannot consider those relating to the refusal of instructions, because no matter how clearly correct such instructions may be as abstract statements of law, their refusal was proper unless they were applicable to the evidence adduced; and whether or not they were so applicable we cannot determine without a bill of exceptions. Furthermore, in examining the instructions given, in the absence of a bill of exceptions we must presume that they were applicable to the evidence, and could only reverse the judgment for error in giving instructions, if such instructions could not, under any circumstances under the pleadings, be otherwise than prejudicially erroneous. We therefore confine our examination of the case to the limits stated.

The charge of the district court was very long. The instructions were evidently prepared and requested by counsel. It followed that several instructions, stating in substance the same proposition of law, but in varying language, having been submitted, the court in several instances gave the whole group of such instructions, so that the

charge is open to the criticism of unnecessarily reiterating the same general proposition, and it is attacked for that reason. It has, however, been established that the repetition of a proposition of law in several instructions is not reversible error unless it be made to appear that the fact of such repetition was prejudicial to the defeated party. (*Hill v. State*, 42 Neb., 503; *Carleton v. State*, 43 Neb., 373; *Gran v. Houston*, 45 Neb., 813.) We think this case falls within the rule stated. It will be unnecessary to quote at length each of the instructions which the bank attacks. Attack is not made upon the form of language employed, but upon the proposition of law submitted; and we shall, for the most part, consider those propositions without reference to the specific instruction or instructions in which they were embodied.

One of the defenses was that the notes sued on were secured by mortgage and that another action was pending to foreclose the mortgage. By one of the instructions the jury was told that both remedies might be pursued at the same time. This as a general abstract statement of law would be incorrect (*Meehan v. First Nat. Bank of Fairfield*, 44 Neb., 213); but we cannot learn without a bill of exceptions whether the proof showed a state of affairs within the rule announced in the case cited, or even whether there was any proof in support of the plea. Error, therefore, much less prejudicial error, does not appear.

In several of the instructions the jury was told that if certain other facts, not necessary to here mention, should be found, then the plaintiff might recover, although Bostwick, the president of the bank, had converted the proceeds of the sale of the notes to his own use, and had thereby defrauded the bank. These instructions are attacked on the ground that the bank had pleaded no such matter in defense, and that the instructions were, therefore, not within the issues. But many things may develop on the trial not directly pertinent to the issues, and which a jury

might consider pertinent in the absence of an instruction that they should be disregarded. In such cases it is proper for the trial court to direct the jury to disregard such matters. For all that appears from the record these instructions were of this character.

The fourth instruction was to the effect that if on or about May 10, 1889, the bank purchased from Paul the notes in action and placed to Paul's credit the sum of $9,525 in payment for said notes, and if, on or about May 18, the bank sold said notes to the plaintiff for $10,300, paid by plaintiff to the bank, and the bank retained for its own use $775 of said money, then the verdict should be for the plaintiff. The objection urged to this instruction is that it held the bank liable for the whole amount of the notes, provided the jury found that it received the benefit of $775 only; but in view of the issues the instruction was correct. The plaintiff alleged a sale of the notes by Paul to the bank and a resale with contract of guaranty by the bank to the plaintiff. One of the defenses was that the bank never owned the notes; that they were not sold by the bank, but by Bostwick, for the benefit of himself and others, and that Bostwick had no authority to execute the guaranty. When we read this instruction we find it told the jury that if the bank bought the notes and paid Paul $9,525 therefor, or rather by credit on his account became his debtor for that sum, and if it then sold the notes for $10,300, and retained for its own use $775, which was the difference between the purchase and selling price, it was liable. We must assume that the evidence warranted an instruction restricting the inquiry to this class of facts; and if so, such a transaction would, under the former opinion in this case, be a ratification of Bostwick's act and charge the bank upon the guaranty. The amount of profit realized by the transaction would not affect the liability. Closely allied to the question just considered is the contention that some of the instructions are erroneous in sub-

59

mitting a question of estoppel to the jury when none was pleaded. What counsel conceive to present a case of estoppel grows out of the facts referred to in the instruction last criticised, and also out of the fact that the bank had made Bostwick its president and clothed him with apparent authority to make the contract sued on. It is not true that in all cases to be available an estoppel must be strictly pleaded as such. The rule is that where the pleadings present the opportunity the particular facts relied on as constituting an estoppel must be pleaded. All these facts are pleaded, and we think the plaintiff is entitled to the benefit of the law arising therefrom, although he did not by reply collate them anew and replead them avowedly by way of estoppel.

In two instructions the jury was told that the authority of Bostwick to execute the guaranty was conclusively presumed, and this statement is attacked. It was held on the former hearing that the authority of the president to execute the guaranty would be conclusively presumed in favor of a purchaser without notice to the contrary. This rule was laid down with reference to the facts of the case, and was derived from *People's Bank of Belleville v. Manufacturers Nat. Bank*, 101 U. S., 181. In both of the instructions given the general statement attacked was coupled with other elements confining the rule within the limit stated in the former opinion, and it was therefore not erroneous.

The jury was instructed that possession of negotiable instruments is *prima facie* evidence of ownership. In another instruction this was qualified with the further requirement that such instruments should be in form negotiable by delivery. These statements were made in connection with instructions in regard to plaintiff's right to presume that the bank was the owner of the paper. It is settled that in an action upon an instrument negotiable by delivery, possession is *prima facie* evidence of ownership

(*McDonald v. Aufdengarten,* 41 Neb., 40), and the pur-
chaser of paper is certainly warranted in acting upon evi-
dence which is sufficient in a court of justice.

Another statement in the instructions, two or three times
repeated, calls for closer examination.   It is, in effect, that
although the notes were not the property of the bank,
plaintiff may recover, provided Bostwick, the president of
the bank, represented that the bank owned the notes, if the
plaintiff bought them relying on that representation and
remitted the purchase money to the bank.   The bank had
no authority to guaranty the payment of the paper except
in course of its banking business.   It had no authority to
execute such a guaranty for the accommodation merely of
others.   It had authority to buy commercial paper and sell
it; and in connection with the sale to guaranty its payment.
(*Thomas v. City National Bank of Hastings, supra.*)   The
argument is that while Bostwick might bind the bank, al-
though without special authority so to do, in dealing with
the bank's property, he could not bind the bank by con-
tracts made in its name on matters not connected with its
business; and that his representation and declarations were
not sufficient in a particular transaction to establish the fact
that that transaction was on behalf of the bank, and that
its subject-matter was the bank's property, nor were they
sufficient to justify the plaintiff in believing so.   This ques-
tion is by no means new, and has not met an entirely uni-
form solution by the courts; but we take it that the better
doctrine is that in such a case, where one of two innocent
persons must suffer through the misfeasance of the agent
of one, that one who has placed the agent in a position to
perpetrate the fraud must suffer.   This general rule will
hardly be controverted. (*Hern v. Nichols,* 1 Salk. [Eng.],
289, and many other cases.)   It has been applied to cases
like the present.   Thus, in *Houghton v. First Nat. Bank of
Elkhorn,* 26 Wis., 663, the case was very much like that
before us, and the court held the bank bound by the repre-

sentation .of the cashier indorsing the paper, that it be-longed to the bank. *North River Bank v. Aymar,* 3 Hill [N. Y.], 262, and *Bank of Genesee v. Patchin Bank,* 19 N. Y., 312, are equally in point, while the same principle is recognized, but under more different facts, in *Farmers & Mechanics Bank v. Butchers & Drovers Bank,* 14 N. Y., 623, 16 N. Y., 125; *City Bank of New Haven v. Perkin,* 29 N. Y., 554; *Bank of State of New York v. Bank of the State of Ohio,* 29 N. Y., 619. The principle is also impliedly recognized in *West St. Louis Savings Bank v. Parmelee,* 3 Dill. [U. S.], 403, 95 U. S., 557, although in the last case the bank was held not liable, because from the form of the note and from facts within plaintiff's knowl-edge he was charged with notice that the paper was that of the cashier and not that of the bank. It may be that the representations of the president at all times and at all places would not bind the bank upon this question; but again we must indulge the presumption in favor of the cor-rectness of the instruction. If the representations were made in the banking house while the president was appar-ently engaged in performing his duties as such officer, we have no doubt that the plaintiff was justified in relying on his representation so made that the bank owned the note.

No other arguments are advanced calling for special no-tice here.

JUDGMENT AFFIRMED.