STATE OF IOWA EX REL., B. F. CARROLL, AUDITOR OF STATE, v. THE CORNING SAVINGS BANK, Defendant, C. F. ANDREWS, Appellee, IOWA NATIONAL BANK and W. O. CURTIS, Intervenors, BRUCE BUTLER, Appellants.

**Savings banks:** IMPLIED POWERS: INDORSEMENT OF COMMERICAL
1 PAPER: STATUTES. Savings banks are authorized by Code, section 1850, to " discount, purchase, sell commercial paper, notes," etc., which carries with it power to employ such means and assume such obligations as are ordinarily undertaken in such transactions, as the indorsement or guaranty in transferring the same : and this power is not limited by Code, section 1855, which prohibits the creation of liability against the bank except for deposits, expenses or obligations incurred for obtaining money with which to pay deposits.

**Same:** LIABILITY FOR WRONGFUL ACTS OF OFFICERS. Those dealing
2 with a savings bank in the purchase of commercial paper may rely on the act of its president, clothed with authority to represent it in indorsing the same as the act of the bank, even

though he misappropriate the fund received; and it cannot be heard to complain against those in good faith dealing with him as a representative, under the rule that where one of two innocent parties must suffer, the one who has made the wrong possible must bear the loss.

Same: *Bona fide* HOLDER: NOTICE. Irregular numbering of commercial paper purchased at different times, where the purchaser was not familiar with the system of numbering; similarity of signatures, where the purchaser knew nothing of the signature of persons purporting to have signed the paper; the magnitude of the transaction; erasure from the indorsement of the words "without recourse," when done at the purchaser's request; and the requirement that the officer of the bank negotiating the same affix his personal indorsement, are held insufficient to charge a purchaser with notice of the fictitious character of the paper.

Banks and banking: SALE OF NEGOTIABLE PAPER: LIABILITY FOR ACTS OF OFFICER. A purchaser in due course and before maturity of commercial paper from the president of a savings bank who is acting within the scope of his duties as president, which is indorsed both by the bank and such officer, may assume that the bank had acquired title to the paper prior to its negotiation and may rely on its indorsement, even though the paper was originally drawn payable to the president in his individual capacity; for the statute does not prohibit an officer from selling his bank negotiable paper unless resorted to for the purpose of indirectly obtaining a loan, and even then by appropriate proceedings such a loan may be effected.

Forged paper: RECOVERY ON INDORSEMENT. The fact that the signatures to commercial paper are forgeries will not affect a right of recovery on indorsements and guaranties of the paper.

Banks and banking: INSOLVENCY: PREFERRED CLAIMS. A certificate of deposit which is in fact simply evidence of a loan, and not of deposit, will not be established as a preferred claim against the insolvent bank issuing the same.

*Appeal from Adams District Court.*— HON. H. K. EVANS, Judge.

WEDNESDAY, APRIL 8, 1908.

REHEARING DENIED, TUESDAY, SEPTEMBER 29, 1908.

INTERVENTION to have certain claims allowed against the receiver of a defunct bank. The petition was dismissed, and claimant appeals.— *Affirmed* in part, and *reversed* in part.

*C. W. Johnston,* for appellant.

*Maxwell & Maxwell, W. E. Miller,* and *Arthur W. Wells,* for appellee.

LADD, C. J.— This is an application by way of petition of intervention for the allowance against the receiver of the Corning State Savings Bank of claims of the Iowa National Bank and W. O. Curtis, based on indorsements or guaranties of certain notes and school warrants, and on certificates of deposit purporting to have been issued by the insolvent bank. Since filing the petition these claims have been assigned for the purpose of collection to Bruce Butler. The record discloses that for some years prior to February 13, 1904, when the Corning bank closed its doors, the Iowa National Bank was its Des Moines correspondent, and, as such, purchased a large number of promissory notes and some school warrants. Some of these were taken in the name of Curtis for the bank. These notes may be classified (1) as genuine notes payable to and indorsed in ordinary form by the Corning State Savings Bank; (2) forged notes purporting to be so payable and indorsed as above; (3) forged notes purporting to be payable to La Rue, and by him indorsed, and also indorsed by the bank in blank; (4) notes and warrants running to other parties, and indorsed by them and also by the bank; (5) notes as above guaranteed by the bank, as well as being indorsed. The receiver in defense contends (1) that the bank is not liable on its indorsement or guaranty; and (2) even if it should be ordinarily, there was enough on the face of these notes to charge the Iowa National Bank

with notice of their fraudulent character; and (3) that the certificates of deposit were executed for money loaned.

I.  Section 1850 of the Code of 1897 provides that:

Each savings bank shall invest its funds or capital, all moneys deposited therein and all its gains and profits, only as follows:  (1) In bonds or interest bearing notes or certificates of United States;  (2) in bonds or evidences of debt of this State, bearing interest;  (3) in bonds or warrants of any city, town, county or school district of this State, issued pursuant to the authority of law; but not exceeding twenty-five per cent. of the assets of the bank shall consist of such bonds or warrants;  (4) in notes or bonds secured by mortgage or deed of trust upon unincumbered real estate in this State, worth at least twice the amount loaned thereon;  (5) it may discount, purchase, sell and make loans upon commercial paper, notes, bills of exchange, drafts, or any other personal or public security, but shall not purchase, hold or make loans upon the shares of its capital stock.

Ordinarily with, and as a necessary part of, powers expressly conferred are these incidental powers which are implied, because essential to the execution of the express powers.  So that, in the absence of other limitation, the authority to " discount, purchase, sell commercial paper, notes," etc., carries with it the power to employ such means and assume such obligations as are ordinarily and customarily resorted to and undertaken in these transactions, and savings banks, in dealing with the paper named, may incur such liability in transferring the same as is ordinarily essential and customary under the law merchant.  This appears from *Ubbinga v. Farmers' Savings Bank,* 108 Iowa, 222, and the principle is too well established to require discussion.  We do not understand appellee to claim otherwise save as such power may be limited or defeated by section 1855 of the Code of 1897, which declares that " no savings bank, its directors or trustees shall contract any debt or

1. SAVINGS BANKS: implied powers: indorsement of commercial paper: statutes.

liability against the bank for any purpose whatever, except for deposits and the necessary expenses for managing and transacting its business, and to pay obligations incurred for the purpose of obtaining money with which to pay deposits." Both sections are found in the chapter devoted entirely to savings banks, and should be so construed, if possible, as to render neither nugatory.

We cannot think that after authorizing savings banks to deal in paper as commercial banks the Legislature intended so to limit and cripple such authority so as practically to defeat the object sought to be attained. Very little paper comparatively passes on indorsement " without recourse," and even then this does not obviate the liability involved in the warranty of genuineness and of title. Code Supp. 1902, section 3060–a65. If appellee's view should prevail, every one in taking paper from a savings bank must not only receive it indorsed " without recourse," but must know at his peril whether the paper is genuine and the bank has title, as well as that the object of the officers of the bank in disposing of it was " for the purpose of obtaining money with which to pay deposits." As said, such was not the design of the lawmakers, but rather that section 1855 should be construed in connection with those proceeding it — section 1850 authorizing saving banks to " discount, purchase, sell " in the customary way, section 1851 empowering them to purchase places of business and convey any realty that may be acquired thereby incurring liability — as prohibiting the creation of any indebtedness, or liability, save as thereinbefore authorized, and except for purposes therein named. Appellee relies on *Laidlow v. Pacific Bank*, 137 Cal. 392 (70 Pac. 277), but the California statute conferred no authority to " discount, purchase, sell " commercial paper and the like, and therefore the case is not in point.

Some of the provisions of the chapter relating to savings banks doubtless were enacted for the protection of depositors. *State v. Corning State Savings Bank*, 127 Iowa, 198. But

the institutions as authorized by statute differ radically from savings banks as originally organized. *Sherwood v. Home Savings Bank,* 131 Iowa, 528. And substantially all of the philanthropy involved in their conception originally has disappeared under the touch of modern legislation. One of the basic functions of banking is the dealing in notes, bills of exchange, and credits. Morse on Banks and Banking, section 2; *Auten v. U. S. Nat. Bank,* 174 U. S. 125 (19 Sup. Ct. 628, 43 L. Ed. 920). And the design in enacting the section of the statute first quoted seems to have been to obviate any doubt as to the power of savings banks to engage in the general banking business, restricted only by such limitations as appear to have been thought essential to the preservation of the beneficial features of the early savings banks, and especially those calculated to shield savings placed in their keeping from exploitation and loss. Having authority to deal in commercial paper, they necessarily must assume the obligation incidental thereto, and among these are those of guaranty and indorsement in transferring the same. As said in *People's Bank v. Manufacturers' Nat. Bank,* 101 U. S. 181 (25 L. Ed. 907): " To hand over with an indorsement and guaranty is one of the commonest modes of transferring the securities named. A guaranty is a less onerous and stringent contract than that created by such an indorsement." See, also, *Thomas v. City Nat. Bank,* 40 Neb. 501 (58 N. W. 943, 24 L. R. A. 263). The decisions to the effect that banks authorized to deal in commercial paper are bound by their indorsements or guaranties of their executive officers are too numerous for citation. But see Morse on Banks and Banking, section 158; *Auten v. U. S. Nat. Bank, supra.*

II. The several notes and warrants were negotiated by La Rue as president of the Corning bank.

2. SAME: liability for wrongful acts of officers. That he acted with such apparent authority that the bank was bound thereby appears from *Griffin v. Erskine,* 131 Iowa, 444, and *Martin v. Webb,* 110

U. S. 7 (3 Sup. Ct. 428, 28 L. Ed. 49). La Rue, though president, was the chief executive officer of the Corning bank, and the Des Moines bank had the right to rely upon him as representing his bank in negotiating the paper. It may be that he appropriated the proceeds of these notes (probably he did); but that was not the lookout of the Des Moines bank. It dealt with him as an officer and representative of the Corning bank as it had the right to do, and without notice of any want of fidelity in the discharge of his duties as its executive officer. Having armed him with apparent authority to represent it in transacting business appropriate to the proper discharge of its corporate functions, the bank, or the receiver standing in its shoes, cannot be heard to complain as against those who, in good faith and without notice, dealt with him as its representative. In such a case the doctrine obtains that, where one of two innocent persons must suffer through the misfeasance of an agent of one, that one who has placed the agent in a position to perpetrate the fraud must suffer. *City National Bank v. Thomas,* 46 Neb. 861 (65 N. W. 895).

III. It is urged, however, that the condition of the paper was such that in connection with the magnitude of the business intervener was charged with notice. In the light of present knowledge there would be little difficulty in detecting the spurious paper negotiated by La Rue ostensibly for the Corning bank. Thus the numbers on the notes were irregular, the numbers of the later being smaller than those of an earlier date, and others bearing numbers of too great disparity, and there was marked similarity between the signatures attached to the forged paper. But as the notes were received at different times, the officers of the Des Moines bank, unless their suspicions were aroused, would not be likely to notice the irregularity in the numbering, or to compare the numbers on each note received with those previously purchased, nor to make such comparison of signatures. Its officers knew nothing of the signatures

3. SAME: *bona fide* holder: notice.

of the persons whose names purported to be attached to the notes, nor of the Corning bank's system of numbering the same. Necessarily it must have been purchased on the faith and largely in reliance on the representations made. The magnitude of the transactions would not necessarily put the Des Moines bank on inquiry, for each was plausibly and reasonably explained by La Rue. The erasure of the indorsement " without recourse " was at the purchaser's suggestion, and no more than indicated a purpose on La Rue's part of shielding his bank from liability. Certainly this could not be construed as showing a want of authority to indorse in the ordinary way. That La Rue's personal indorsement was required is explained by the understanding of the bank's officers that he was a man of large means. That he was willing to add his indorsement under these circumstances tended to confirm rather than throw doubt on the validity of the transactions. The intervener was without actual knowledge of any defects in the notes, and we are of the opinion that the knowledge of facts by its officers was not such as to indicate that they were received otherwise than in good faith.

IV. Nor did the Des Moines Bank take the notes to La Rue as payee subject to the defenses now set up. These notes were indorsed by La Rue and the Corning bank. Un-

4. BANKS AND BANKING: sale of negotiable paper: liability for acts of officers.

doubtedly La Rue, as president of the bank, could not contract with himself for the purchase of these notes, but the board of directors could have done so or the notes might have been drawn in his name as a matter of convenience to the bank, and, in the absence of anything indicating the contrary, the Des Moines bank had the right to assume that the Corning bank had so proceeded as to acquire the title thereto. La Rue, in transferring any of the papers, did not undertake to act for himself, but solely for the bank of which he was the chief executive officer. What he did was within the scope of duties ordinarily devolving on such an officer, and those who dealt

with him as the representative of the bank had the right to do so on the ground that what he did was with its ostensible authority, even though in fact having no connection with the bank's business, but with the design of promoting his individual schemes. Section 1869 of the Code of 1897 does not prohibit an officer of the bank from selling negotiable paper, unless this is resorted to indirectly to obtain a loan, and even then by appropriate procedure such a loan may be effected; and as the bank, in indorsing these notes to intervener, warranted its title and the genuineness of the instrument, the latter might well presume that title thereto had been legally acquired by it. The rule might be different were the action based on the transaction between La Rue and the Corning bank. See *Porter v. Winona & D. G. Co.,* 78 Minn. 210 (80 N. W. 965); *German Savings Bank v. Des Moines Nat. Bank,* 122 Iowa, 737. But the intervener purchased the paper in due course before maturity, and is entitled to protection, under the indorsement or guaranty of the bank executed within the scope of his authority, as president of the bank and charged with its management. The Corning bank thereby impliedly warranted: (1) That the instruments were genuine and what they purported to be; (2) that it had a good title to them (section 3060–a65, Code Supp. 1902), and engaged that they would be paid, and, if dishonored, on proper proceedings being taken, it would pay the amount to the Des Moines bank (section 3060–a66, Code Supp. 1902).

V. The contention that the value was not paid for the paper is without foundation. *The Commercial Bank v. Citizens' State Bank,* 132 Iowa, 706, is not in point, for here not only was credit for the price of the paper allowed, but the money was subsequently withdrawn in the name · of the Corning bank through La Rue. The point that no action can be maintained because of section 3060–a23, Code Supp. 1902, is disposed of by saying that no claim is made on the notes, but

5. FORGED PAPER: recovery on indorsements.

on the indorsements and guaranties only. The receiver appears to be entitled to some credits not appearing on the account as presented, such as $2,700 received in insurance and $1,400 on draft paid. These can be readily adjusted in making up the final entry.

VI. The three certificates of deposit were merely evidences of loans made, and not of deposits. On November 5, 1903, La Rue wrote the Iowa National Bank: That $30,-000 in bridge bonds issued by the county had been allotted to his bank; that it would have to take up and carry for a short time about $15,000 of old bonds; and, further: " We will net $450.00 and accrued int. on the deal but will have to finance the amt. named and are not fixed to do it. Can you help out on $10,-000.00 of this for thirty to forty days? If so, I will send you up some paper maturing in Dec. and will not object to any fair rate as this will bring us a big deposit of $15,000.00 or more and is worth a good deal in prestige to us. Wire me in the morning if you can do this and if you possibly cannot I will go to Chicago and see if by any means I can sell them there and get an advance on them until they can be made and delivered." Seven days later two certificates of $5,000 each, drawing interest at the rate of 7 per cent. per annum, payable in forty and forty-five days, were mailed to it by La Rue. These were renewed January 17, 1904. Credit for the full amount was given the coming week. That this amounted to nothing other than a loan is settled in *State v. Corning State Savings Bank,* 136 Iowa, 79. The other certificate was for $6,000, dated August 23, 1903, payable in six months, with interest at the rate of 6 per cent. per annum. In the correspondence relating thereto is a letter by La Rue, president, dated August 26, 1903: " Herewith find our certificate of deposit for credit our account $6,000.00. I would like to send you about ten thousand dollars more paper and do not think we will need cash any more for some time as the cattle are beginning to

*6. Banks and banking: insolvency: preferred claims.*

go." Credit for the amount was entered on the books of the Iowa National Bank, and was paid out on drafts by La Rue, president, or transferred to Chicago and New York banks, and then so withdrawn. Whether any of it even reached the Corning bank or swelled its assets does not appear. This, in connection with the other evidence showing that La Rue was frequently calling on its correspondents for money, shows beyond doubt that the transaction was a loan. What was said by the majority in a Michigan case, *State Savings Bank v. Foster,* 118 Mich. 268 (76 N. W. 499, 42 L. R. A. 404), is particularly applicable: "Under the arrangement the petitioning (creditor) bank took these two certificates of deposit with the understanding that the People's Savings Bank might draw its drafts upon it to the amount represented by the certificates and it would honor the drafts, or it may have credited the People's Savings Bank in account upon its books. The certificates were simply the evidence of debt, and nothing more. It may as well have held the notes of the People's Savings Bank. The transaction would have been no different." The petitioner was denied standing and preference as a depositor. This case is stronger than that in this; there was no showing that the assets of the bank were actually enlarged by the transaction, whereas this feature was made the basis of the dissent in the case cited. The certificates were void, and were rightly rejected.

The claim as based on the indorsements and guaranties should have been allowed, though with the credits of $2,700 received by the bank on insurance, and $1,400 on a draft not noted in the statement of the claim. The cause will be remanded for the entry of a decree. *Affirmed* in part, and *reversed* in part.