## 11843

HOWARD & FOSTER Co. v. CITIZENS NAT. BANK OF UNION
ROBERTS, JOHNSON & RAND SHOE CO. v. SAME

(130 S. E., 758)

1. BANKS AND BANKING—CONTRACTS OF OFFICERS OF NATIONAL BANK, GUARANTEEING DEBT OF ANOTHER, ARE ULTRA VIRES.—A national bank, under federal law being limited in its powers and capacity, cannot lend its credit by guaranteeing the debt of another, and all such contracts entered into by its officers are *ultra vires* and not binding on the corporation.

2. BANKS AND BANKING—GUARANTY OF PRESIDENT OF NATIONAL BANK FOR DEBT OF CLOTHING COMPANY HELD ULTRA VIRES AND VOID.—Guaranty of president of national bank for merchandise sent to clothing company *held ultra vires* and void.

3. BANKS AND BANKING—LIABILITY OF NATIONAL BANK ON GUARANTY, BASED UPON IMPLIED OBLIGATION TO RESTORE WHAT IT MAY HAVE RECEIVED INDIRECTLY RESULTING FROM GUARANTY.—Liability of a national bank, which through its president guaranteed debt of clothing company, indirectly profiting from proceeds of goods for which guaranty was given, is based, not on guaranty contract, but on implied obligation on part of corporation to restore that which it may have received.

4. BANKS AND BANKING—VALUE OF BENEFIT RECEIVED BY NATIONAL BANK FROM GUARANTY TO PAY FOR MERCHANDISE OF CLOTHING FIRM MUST BE SHOWN TO RECEIVER ON IMPLIED OBLIGATION.—Guaranty of national bank for goods shipped to clothing company, being *ultra vires* and absolutely void as contract, and remedy being upon implied obligation, value of benefit received by bank from such guaranty must be shown.

5. BANKS AND BANKING—CREDITOR RELYING UPON GUARANTY OF OFFICER OF NATIONAL BANK FOR GOODS SHIPPED TO CLOTHING FIRM MIGHT HAVE SET FORTH ALL OF FACTS CONNECTED WITH TRANSACTION AND RECOVERED ON IMPLIED OBLIGATION.—Creditor who sold goods to clothing firm, relying on guaranty of officer of national bank, might have set forth two causes of action, one on guaranty and one on implied obligation, and, on failure of bank to force an election, recovery might have been had on either, or might have set forth all of facts and recovered on implied obligation.

6. CONTRACTS—PLAINTIFF MAY NOT COUNT IN HIS COMPLAINT UPON EXPRESS CONTRACT AND RECOVER ON IMPLIED CONTRACT.—Plaintiff may not count in his complaint upon express contract and recover on implied contract.

7. BANKS AND BANKING—INTEREST ON ACCOUNT GUARANTEED BY NATIONAL BANK RUNS ONLY FROM DATE OF DEMAND AND DENIAL.—Interest on account guaranteed by officer of national bank runs only from date of demand and denial, since cause of action would be based upon implied obligation of bank to restore what it might have received.

8. BANKS AND BANKING—ISSUE OF VALUE OF BENEFIT RECEIVED BY BANK GUARANTEEING CLOTHING ACCOUNT MUST BE BY TANGIBLE EVIDENCE AS TO MONEY RECEIVED AS CONSEQUENCE OF GUARANTY.—Issue of value of benefit which Bank guaranteeing account of clothing company may have received because of deposits of money received from sales is not to be determined by evidence of value of uncertain, intangible, speculative benefit, which accrued by continuance in business of clothing company, but by tangible evidence of value of property or money which found its way in possession of bank as consequence of guaranty.

9. PLEADING—AFTER RECEIPT OF EVIDENCE TENDING TO ESTABLISH IMPLIED OBLIGATION WITHOUT OBJECTION, IN ACTION ON GUARANTY, PLAINTIFF WILL BE ALLOWED TO AMEND COMPLAINT.—National bank guaranteeing account of clothing company would ordinarily be entitled to nonsuit under rule 27, in action on guaranty, but, where evidence was admitted without objection, tending to sustain theory of implied obligation, plaintiff will be allowed to amend complaint to set forth cause of action based upon implied obligation.

Before SEASE, J., Union, May, 1924. Reversed and remanded.

Separate actions by the Howard & Foster Company and the Roberts, Johnson & Rand Shoe Company against the Citizens National Bank of Union. From judgments for plaintiffs, defendant appeals.

*Messrs. Sawyer & Kennedy,* for appellant, cite: *Bank cannot lend its credit for sole benefit of another:* 66 S. C., 491; 27 C. C. A., 171; 160 Fed., 642; 173 Mo., 153; 72 S. W., 1059; 32 L. R. A. (N. S.), 544, 547 and 553; 17 L. R. A. (N. S.), 526; 7 C. J., 784, 807, 814 and 815. *Ultra vires acts of corporation not binding:* 167 U. S., 362; 42 L. Ed., 198; 32 L. R. A. (N. S.), 553. *State*

*Courts must follow U. S. Supreme Court in construing powers of national banks:* 173 Mo., 153; 72 S. W., 1059; 27 C. C. A., 171; 49 U. S. App., 496; 82 Fed., 799. *Powers of national banks:* 167 U. S.; 362; 42 L. Ed., 198; 17 Sup. Ct. Rep., 831; 139 U. S., 67; 35 L. Ed., 107; 11 Sup. Ct. Rep., 496; 8 A. L. R., 245; 1916 A. L. R., 584. *Ultra vires acts of corporation not binding:* 167 U. S., 362; 42 L. Ed., 198; 32 L. R. A. (N. S.), 553; 7 R. C. L., 673; 14a C. J., 308, 508 and 582; 10 Cyc., 1148. *Cases distinguished:* 103 S. C., 783 66 L. Ed., 594.

*Mr. John K. Hamblin,* for respondents, cites: *Liability of national banks on contracts of guaranty:* 87 S. C., 387; 68 S. C., 13; 66 L. Ed., 593; 103 S. E., 786; 114 N. E., 749; 77 Fed., 85; 216 U. S., 106; 12 R. C. L., 1081. *Corporation receives benefits from its ultra vires contracts:* 77 Fed., 85; 96 U. S., 351; 114 N. E., 749. *Powers of national banks:* Barnes' Fed. Code, 1919, Sec. 9161; 321 U. S., 140; 223 U. S., 510; 202 U. S., 300; 200 U. S., 425; 167 U. S., 367; 152 U. S., 231; 93 U. S., 127. *Liability of bank for unauthorized acts of its officers:* 229 U. S., 512; 152 U. S., 352; 77 Fed., 85; 10 Wall., 644. *Evidence not objected to at trial:* 95 S. C., 9; 93 S. C., 168; 88 S. C., 217; 87 S. C., 434; 85 S. C., 221.

October 26, 1926.

The opinion of the Court was delivered by Mr. Justice Cothran.

These two cases were tried together in the Circuit Court. Each is an action upon an alleged guaranty by the defendant bank, of an account for goods sold by the plaintiff to a mercantile corporation, Union Clothing Company, at Union, S. C. In the first case the amount was limited to $1,300, the account was for $1,300, subject to certain credits which reduced it to $1,074.80; in the second, the amount was limited to $1,250, the account was for $962.21, subject to certain credits which reduced it to $821.02. Upon each

account the plaintiff claimed interest from its maturity, November 21, 1921.

If the defendant be liable upon the respective guaranties, to the extent of the unpaid balances upon the accounts, with interest as stated, the liabilities will be:

To Howard & Foster Co.:

| | |
|---|---:|
| Balance ............................... | $ 1,074.80 |
| Interest ............................... | 185.56 |
| | $ 1,260.36 |

To Roberts, etc., Shoe Co.:

| | |
|---|---:|
| Balance ............................... | $ 821.02 |
| Interest ............................... | 141.76 |
| | $ 962.78 |

The alleged guaranties are in practically identical terms; the legal propositions are the same as to each case; and for convenience we will consider the *Howard & Foster Co. Case.*

The alleged guaranty is dated August 5, 1921, and is as follows:

"Referring to the order you have from the Union Clothing Company, of this city for fall, amounting to $1,300, beg to ask that you make up same; ship out half of the order Sept. 15th next, regular terms, net 60 days, the balance Oct. 1st next, regular terms, 60 days. I understand you wish us to assure you of payment, all of which we will see is done."

The letter is signed "R. P. Morgan, Pres't." This letter was preceded by a letter from "R. P. Morgan, Pres't," dated July 9, 1921, asking the plaintiff to extend credit to Union Clothing Company to the extent of $1,300. On July 18, 1921, the plaintiff wrote to the Union Clothing Company requesting them to obtain a formal signed guaranty from the proper officials of the bank, and in reply thereto the guaranty above set forth was forwarded. The receipt of

it was acknowledged by the plaintiff on August 9, 1921, and the goods seasonably shipped out.

No question appears to have been made in the case whether the guaranty, signed as it was "R. P. Morgan, Pres't," constituted an obligation of the bank and not the personal obligation of R. P. Morgan. On the contrary, the fourth paragraph of the answer appears to admit that it was the act of the bank.

It appears from the evidence, that at the time that the guaranty was issued the Union Clothing Company was indebted to the bank, upon unsecured notes amounting to $11,300, and that after the goods were shipped and mingled with other merchandise, the Union Clothing Company paid to the bank, at different times during the months of November and December, 1921, some $5,000, which was applied to the indebtedness of $11,300 referred to. During that fall all cash sales were deposited with the bank and checks to the above amount were drawn in favor of the bank. At the conclusion of the evidence, the presiding Judge refused a motion by the defendant, to direct a verdict in its favor, and granted a similar motion by the plaintiffs. Accordingly, verdicts were rendered in favor of the Howard & Foster Company for $1,433.84, and in favor of the other plaintiff for $962.21, which represented the amounts of the accounts with interest from November 21, 1921. It will be noticed, however, that the amount due upon the account of Howard & Foster Company, according to their complaint, was $1,074.80 with interest from November 21, 1921, a total as shown above of $1,260.36, and that the verdict for $1,433.84 was excessive to the extent of $173.48.

From the judgments entered upon these verdicts, the defendant bank has appealed.

It has been settled beyond controversy that a national bank, under the federal law, being limited in its powers and capacity, cannot lend its credit by guaranteeing the debt of another. All such contracts, entered

into by its officers, are *ultra vires,* and not binding as such upon the corporation. 7 C. J., 814; Ann. Cas., 1916D, 557. *Merchants' Bank v. Baird,* 160 F., 642; 90 C. C. A., 338; 17 L. R. A. (N. S.), 526.

In a note to *Appleton v. Bank,* (N. Y.), 32 L. R. A. (N. S.), 544, it is said:

"Although national banks are expressly authorized by the National Banking Act to lend money upon personal security, *t*hey are without right to loan their credit, either under such express authority or under their incidental powers"—citing *Johnston v. Bank,* 3 Hughes, 657, Fed., Cas. No. 7425. *Seligman v. Bank,* 3 Hughes, 647, Fed. Cas. No. 12642. *National Bank v. Atkinson,* (C. C.), 55 F., 465; and *Thilmany v. Co.,* 108 Iowa, 333; 79 N. W., 68.

"The bank's power of guaranty is confined to paper bought and sold by it in the ordinary course of its business" —citing *Bank v. Thomas,* 46 Neb., 861; 65 N. W., 895, and *People's Bank v. National Bank,* 101 U. S., 181; 25 L. Ed., 907.

2    The liability of the bank upon its guaranty cannot be sustained upon any ground. The guaranty was *ultra vires* and void. It cannot be sustained upon the ground of estoppel, for the bank cannot be estopped from setting up the defense of *ultra vires* which goes to the very life and validity of the guaranty. It cannot be sustained as a transaction incidental to its business as a bank, for it clearly was not.

To sustain the action of the president of the bank upon the ground that the Union Clothing Company owed it money and would be enabled in its mercantile venture, aided by the guaranty, to repay its loans, is equivalent to holding that the president would have been authorized to put the bank's money into such venture with the hope of debtor's making sufficient profit to enable him to repay the debt theretofore existing; a proposition which we cannot think would be urged by any one.

Notwithstanding the rule, enforced with rigidity in the Federal Court, that such contracts are *ultra vires,* the party who has parted with his property or money upon the faith of an *ultra vires* contract is not without rights and a remedy. Where the corporation, which was a party to such a contract, has received a substantial benefit from the performance of a related contract with a third party, induced by the execution of the *ultra vires* contract, it has been consistently held by the Federal Courts and all others that it would violate all principles of right and justice that the corporation should be allowed to retain such benefits while repudiating the contract. Its liability cannot be based upon a recognition of the contract, for that is *ultra vires* and void for all purposes; it is based upon the implied obligation on the part of the corporation, to restore that which it may have received, which under its plea of *ultra vires* it had no right to receive and has no right to retain.

There can be no doubt but that, in the present case, it was greatly to the interest of the bank that the Union Clothing Company should continue in business with the hope and prospect of liquidating the claims which the bank held against it, and should obtain from plaintiffs and others merchandise with which to do so. If the validity of the guaranty depended upon the question whether the bank secured any benefit through the guaranty, there could be no doubt of the result; or, if the bank's liability upon its implied obligation depended upon the same question, there could be no doubt of the result. But, as the federal authorities hold, the guaranty, being *ultra vires,* is absolutely void as a contract, and cannot be validated so as to become the basis of an action in any possible manner, estoppel or otherwise; and, the remedy being upon the implied obligation, the value of the benefit must be shown.

The following authorities unquestionably show that, if the plaintiff has any remedy, it is upon the implied obligation, the contract being void.

"The obligation to do justice rests upon all persons, natural and artificial, and if a county obtains the money or property of others without authority, the law, independently of any statute, will compel restitution." *Marsh v. Fulton,* 10 Wall., 676; 19 L. Ed., 1040.

The case of *Citizens' Bank v. Appleton,* 216 U. S., 196; 30 S. Ct., 364; 54 L. Ed., 443, is instructive upon the matter at issue. In that case one Samuels owed the Citizens' Bank (a national bank) $10,000; at the instance of Samuels and the Citizens' Bank, the Cooper Bank loaned to Samuels $12,000, which loan was guaranteed by the Citizens' Bank in pursuance of an agreement between it and Samuels that $10,000 of the $12,000 should be paid by Samuels upon the obligation of $10,000 which he owed to the Citizens' Bank. This was done, and shortly thereafter Samuels was adjudged a bankrupt. Thereupon the receiver of the Cooper Bank brought suit against the Citizens' Bank, setting forth in his complaint fully the facts above stated, and asking judgment for the $10,000 which had been paid to the Citizens' Bank. It was conceded that the defendant was liable only for what it received, not for the whole $12,000 covered by its guaranty. The Court of Appeals of New York held that the defendant was so liable. The case having been carried by writ of error to the Supreme Court of the United States, the judgment was affirmed, both Courts holding that the defendant's guaranty was *ultra vires,* but that it was liable to the plaintiff to the extent of the funds of the Cooper Bank which it received and applied to Samuels' debt; such receipt being induced by the guaranty which it claimed to be *ultra vires.* That it was not liable upon the guaranty is clear, from the fact that its liability was limited to the $10,-000 which was received. In the New York appeal, this significant statement is made by the Court:

"Nor is there any force in the suggestion that this action is not brought in disaffirmance of the contract for money had and received but on the contract of guaranty. All the

facts are set forth in the complaint, and if these facts entitle the plaintiff to relief on any theory, then the complaint states a good cause of action." *Appleton v. Bank,* 190 N. Y., 417; 83 N. E., 470; 32 L. R. A. (N. S.), 543.

It is further said:

"We may assume that the contract [of guaranty] was *ultra vires.* We may further assume that in transactions by national banks we should adopt the law of *ultra vires* as it prevails in the Federal Courts, and not the local law on the subject. Yet the defendant, in our opinion, became plainly liable for the amount which it received under the *ultra vires* contract,"

—not upon the guaranty, but upon the implied obligation to restore the fruits of the contract which he disaffirms. Upon appeal to the United States Supreme Court it was said:

"The plaintiff in error insists that the guaranty given by the Central National Bank to the Cooper Exchange Bank was beyond its power, was in violation of the National Banking Act [13 Stat. 99], and, therefore, could not be made the foundation of an action against the guarantor bank. But this action need not be regarded as one on the written contract of guaranty, but as based on an implied contract between the Cooper Exchange Bank and the Central National Bank, whereby the latter, under the circumstances disclosed by the record, came under a duty to account to the former for the $10,000 of the $12,000 actually paid to Samuels at its request and on its guaranty." *Citizens' Bank v. Appleton,* 216 U. S., 196; 30 S. Ct., 364; 54 L. Ed., 443.

And further:

"Whatever may be said as to the validity of the written guaranty, now alleged to be illegal, the judgment can be supported as based wholly on the implied contract, which made it the duty of the Central National Bank, under the facts disclosed, to account to the Cooper Exchange Bank

for the money obtained from the latter in execution of the agreement made by the former with the borrower."

In *Central Transp. Co. v. Pullman,* 139 U. S., 24; 11 S. Ct., 478; 35 L. Ed., 55, the Court said:

"A contract *ultra vires* being unlawful and void, not because it is in itself immoral, but because the corporation, by the law of its creation, is incapable of making it, the Courts, while refusing to maintain any action upon the unlawful contract, have always striven to do justice between the parties, so far as could be done consistently with adherence to law, by permitting property or money, parted with on the faith of the unlawful contract, to be recovered back, or compensation to be made for it. In such case, however, the action is not maintained upon the unlawful contract, nor according to its terms; but on an implied contract of the defendant to return, or, failing to do that, to make compensation for, property or money which it has no right to retain. To maintain such an action is not to affirm, but to disaffirm, the unlawful contract."

In *Pullman's Palace-Car Co. v. Central Transportation Co.,* 171 U. S., 138; 18 S. Ct., 808; 43 L. Ed., 108, the Court said:

"The right to a recovery of the property transferred under an illegal contract is founded upon the implied promise to return or make compensation for it."

In *Salt Lake City v. Hollister,* 118 U. S., 256; 6 S. Ct., 1055; 30 L. Ed., 176, the Court said:

"The Courts have gone a long way to enable parties who had parted with property or money on the faith of such [*ultra vires*] contracts, to obtain justice by recovery of the property or the money specifically, or as money had and received to plaintiff's use."

In *Central Co. v. Pullman Co.,* 139 U. S., 24 at page 57; 11 S. Ct., 478, 487 (35 L. Ed., 55), it is said:

"The true ground of relief in such cases is clearly shown in a line of opinions, * * * in which municipal cor-

porations, having received money or property under contracts so far beyond their powers as not to be capable of being enforced or sued on according to their terms, have been held, while not liable to pay according to the contracts, to be bound to account for the money or property which they had received."

In *Louisiana v. Wood,* 102 U. S., 209; 26 L. Ed., 153, a city, which had received money for bonds issued by it without authority at an illegal rate of interest and purchased by the plaintiff, was held liable, not upon any contract of purchase, nor on any express contract whatever, but on a contract implied from its receipt of the money.

In *Parkersburg v. Brown,* 106 U. S., 497; 1 S. Ct., 442; 27 L. Ed., 238, it is said:

"This property was transferred under a contract which was merely *malum prohibitum,* and where the city was the principal offender. In such a case the party receiving may be made to refund to the person from whom it has received property for the unauthorized purpose, the value of that which it has actually received."

In *Pittsburgh R. Co. v. Bridge,* 131 U. S., 371; 9 S. Ct., 770; 33 L. Ed., 157, it is said:

"A contract made by a corporation, which is unlawful and void because beyond the scope of its corporate powers, does not, by being carried into execution, become lawful and valid, but the proper remedy of the party aggrieved is by disaffirming the contract, and suing to recover, as on a quantum meruit, the value of what the defendant has actually received the benefit of."

In *Central Co. v. Pullman,* 139 U. S., 24 at page 59; 11 S. Ct., 478, 488 (35 L. Ed., 55), the Court sums up the question thus:

"A contract of a corporation, which is ultra vires, in the proper sense (that is to say, outside the object of its creation as defined in the law of its organization, and therefore beyond the powers conferred upon it by the Legislature),

is not voidable only, but wholly void, and of no legal effect. The objection to the contract is, not merely that the corporation ought not to have made it, but that it could not make it. The contract cannot be ratified by either party, because it could not have been authorized by either. No performance on either side can give the unlawful contract any validity, or be the foundation of any right of action upon it."

The Court proceeds to show that there can be no estoppel upon the corporation to set up the defense of ultra vires; that, while it may be estopped from urging the lack of certain formalities which might have been observed—

"but when the contract is beyond the powers conferred upon it by existing laws, neither the corporation, nor the other party to the contract, can be estopped by assenting to it, or by acting upon it, to show that it was prohibited by those laws." *Central Co. v. Pullman,* 139 U. S., 24 at page 60; 11 S. Ct., 478, 488 (35 L. Ed., 55).

In *Penn. R. Co. v. St. Louis R. Co.,* 118 U. S., 317; 6 S. Ct., 1106; 30 L. Ed., 83, the Court said:

"But we understand the rule in such cases to stand upon the broad ground that the contract itself is void, and that neither what has been done under it, nor the action of the Court, can infuse any vitality into it."

In *Read v. Plattsmouth,* 107 U. S., 568; 2 S. Ct., 208; 27 L. Ed., 414, the Court said:

"Upon the supposition that the bonds issued, as to the excess over $15,000, were void, because unauthorized, the City of Plattsmouth received the money of the plaintiff in error, and applied it to the purpose intended, of building a schoolhouse on property the title to which is confirmed to it by the very statute now claimed to be unconstitutional, and an obligation to restore the value thus received, kept, and used, immediately arose."

In *Penn. Co. v. R. Co.,* 118 U. S., 290; 6 S. Ct., 1094; 30 L. Ed., 83, it is held (quoting syllabus) :

"The doctrine is sound that when acts have been done and property has changed hands under void contracts which have been fully executed, Courts will not interfere; but relief in such cases must be based on the invalidity of the contract, and not in and of its enforcement."

In *McCormick v. Bank,* 165 U. S., 538; 17 S. Ct., 433; 41 L. Ed., 817, it was held that, as the lease in question was void, it could not be made good by estoppel, and will not support an action against the bank to recover anything beyond the value of what it has actually received and enjoyed.

"According to what would seem the more logical view, a corporation, though it has received the benefits of a strictly ultra vires contract, is not estopped to set up the defense of ultra vires when sued upon the contract, though it is universally recognized that recovery may at least be had on a *quantum meruit* for the benefit received by the corporation." 7 R. C. L., 678.

In *Williamson v. Ass's,* 54 S. C., 582; 32 S. E., 765; 71 Am. St. Rep., 822, the Court said:

"Even if the agreement was ultra vires and the defendant could interpose this plea, it would not be allowed to retain the benefits which it derived therefrom, and this would give the plaintiff a cause of action."

In *White v. Bank,* 66 S. C., 513; 45 S. E., 102; 97 Am. St. Rep., 803, the Court said:

"The foregoing cases show that a contract which is *ultra vires* cannot be made the foundation for the liability of the corporation, and, furthermore, that a corporation cannot be made liable on a contract which the law prohibits it from entering into."

The Court quotes with approval from *Central Co. v. Pullman,* 139 U. S., 24, at page 60; 11 S. Ct., 478, 488 (35 L. Ed., 55), as follows:

"In such case, however, the action is not maintained upon the unlawful contract, nor according to its terms; but on an implied contract of the defendant to return, or, failing to do

that, to make compensation for, property or money which it has no right to retain. To maintain such an action was not to affirm, but to disaffirm, the unlawful contract."

The case upon which the plaintiff mainly relies is that of *J. L. Mott Iron Works v. Kaiser Co.,* 131 S. C., 392; 103 S. E., 783. Upon an examination of this case, particularly the opinion of the Supreme Court of the United States, to which it was carried by writ of *certiorari,* it will be seen that the plaintiff's right of recovery was sustained upon the ground that the bank was accountable to the plaintiff, up to the amount of its undertaking, "for the proceeds coming to his (its) hands from the contractee Mott Iron Works) upon the inducement of the contract (of guaranty)."

The facts of that case were these: A firm of contractors, McGhee & McGhee, had a contract to build a hospital in the City of Aiken. They sublet a part of the contract, the heating and plumbing, to Kaiser Company, for $7,800. Kaiser Company had arranged with the bank to finance their undertaking. To secure the bank, Kaiser Company assigned the contract to the bank. McGhee & McGhee, the contractors, agreed to the assignment, and further agreed that the payments which might be due to Kaiser Company by them should be made directly to the bank. The debt of Kaiser Company to the bank was $4,700. Kaiser Company ordered a bill of goods from the Mott Company, amounting to $2,365.50, but before shipping them the Mott Company required a guaranty by the bank, which was given. Thereafter the bank consented that McGhee & McGhee should pay $5,468 to Kaiser Company, out of the funds which had been assigned to it; so that the bank received from McGhee & McGhee, regardless of what it might have received but for the release of the $5,468, $2,332, of the money which Kaiser Company had earned upon its contract through the purchase from Mott Company which was induced by the guaranty of the bank.

The Mott Company then sued the bank upon its guaranty,

and had a verdict in the Court of Common Pleas for Aiken County, for the full amount of their account against Kaiser Company, $2,365.50, plus interest, totaling $2,739.42. The bank appealed to this Court, which affirmed the judgment of the Circuit Court, holding that the bank was liable upon its guaranty, as being a matter incidental under the circumstances to its banking business. The case was then carried by writ of *certiorari* to the Supreme Court of the United States. That Court did not sustain the declaration of this Court that "the bank is clearly liable, on the guaranty," as it manifestly could not have done; but affirmed the judgment upon the ground that the bank was accountable to the Mott Company for the money, virtually belonging to that company as the proceeds of property sold to Kaiser, which the bank had received upon the inducement of the letter of guaranty which it had issued to the Mott Company. The question considered herein, whether the plaintiff, suing upon an express guaranty, can recover upon the implied obligation to restore money or property received by reason of the guaranty, does not appear to have been suggested in either the opinion of this Court or in that of the Federal Court.

It will be observed that the action is based directly and solely upon the written guaranty of the bank; the complaint does not contain a single allegation justifying the conclusion that it is based upon an implied obligation on the part of the bank to restore to the plaintiff money of the plaintiff received and appropriated by the bank, as a result of the execution by it of the guaranty in question.

We apprehend that the plaintiff might have set forth two causes of action, one upon the guaranty, and one upon the implied obligation of the bank as above stated and, upon failure of the defendant to force an election, recovery may have been had upon either as the evidence might warrant (*Barnes v. Gorman*, 9 Rich. [S. C.], 297); or the plaintiff might have set forth all of the facts connected with the transaction and recovered upon the implied

obligation, as was done in the case of *Bank v. Appleton,* 216 U. S., 196; 30 S. Ct., 364; 54 L. Ed., 443. See, also, *Tenn. Ice Co. v. Raine,* 107 Tenn., 151; 64 S. W., 29. The plaintiff did neither; he sued directly and solely upon the express guaranty of the bank. It has been repeatedly held in this State that a plaintiff may not count in his complaint upon an express contract and recover upon an implied contract.

In *Hutson v. Stone,* 119 S. C., 259; 112 S. E., 39, the Court says:

"The rule that an action founded upon an express contract does not admit of a recovery on a *quantum meruit* is a rule of pleading based upon the principle that a plaintiff, who has pleaded upon one theory, should not be allowed to recovery upon another."

To the same ffect are *Fitzsimmons v. Guanahani Co.,* 16 S. C., 192. *Birlant v. Cleckley,* 48 S. C., 298; 26 S. E., 600. *King v. Tel. Co.,* 84 S. C., 73; 65 S. E., 944. *Hursey v. Surles,* 91 S. C., 284; 74 S. E., 618. *Bowen v. Johnson,* 87 S. C., 250; 69 S. E., 294; and *Cleveland v. Butler,* 94 S. C., 406; 78 S. E., 81.

As to the ability of the plaintiff to recover in this action upon the implied obligation of the bank to restore what it received, attention is called to the significant observation of the Court in *Central Co. v. Pullman,* 139 U. S., 24, at page 61; 11 S. Ct., 478, 488 (35 L. Ed., 55):

"Whether this plaintiff could maintain any action against this defendant, in the nature of a *quantum meruit,* or otherwise, independently of the contract, need not be considered, because it is not presented by this record, and has not been argued. This action, according to the declaration and the evidence, was brought and prosecuted for the single purpose of recovering sums which the defendant had agreed to pay by the unlawful contract, and which, for the reasons and upon the authorities above stated, the defendant is not liable for."

As to the matter of interest: While the appeal does not question the allowance of interest upon the account from its maturity, and no modification of the judgment could, in the absence of an exception, be entered in respect thereof, it may be well to direct attention to the rule that in cases like this, where the cause of action might be based upon the implied obligation of the bank to restore that which it may have received, the cause of action does not accrue until demand has been made, and, of course, interest runs only from the date of denial.

"The only contract actually entered into is the one the law implies from what was done, to wit, that the City would on demand return the money paid to it by mistake, and, as the money was got under a form of obligation which was apparently good, that interest should be paid at the legal rate from the time the obligation was denied. That contract the plaintiffs seek to enforce in this action, and no other." *Louisiana v. Wood,* 102 U. S., 294; 26 L. Ed., 153.

The basis of this ruling is that the plaintiffs' cause of action was upon the implied obligation to restore what had been received, upon demand, not upon the guaranty, which would have fixed a different date for interest to commence. In the state of the pleadings at the time of the trial, the action being based upon an express guaranty, the defendants might well have objected to all testimony tending to establish an implied obligation on the part of the bank to restore the value of the benefit which it accepted. Much evidence along this line was received without objection, and it may well be assumed, under these circumstances, that the complaint had been amended to conform to this proof. It does not appear, however, that the verdicts were directed upon this theory, but upon the express guaranties of the bank, which was erroneous; and, if they had been directed upon the theory referred to, there is not sufficient data in the evidence upon which to sustain them. The obligation of the bank is to restore the property or money

which it received in consequence of the guaranties. There is no contention that it actually received any of the shoes sold by the plaintiffs to the clothing company; but it may have received certain amounts of money which represented the proceeds of the sale of the shoes. If so, how much? The issue of the value of the benefit which the bank received, is not to be determined by the evidence of the value of the uncertain, intangible, speculative benefit which accrued to it by the continuance in business of the clothing company, but by tangible evidence of the value of the property or money which found its way into the possession of the bank as a consequence of the guaranties.

Strictly speaking, perhaps, the defendant would, under ordinary circumstances, be entitled to a remand of the case for judgment of nonsuit under Rule 27; but, owing to the admission of evidence, without objection, tending to sustain the theory of implied obligation, and to the reluctance of the Court to sustain the technical plea of *ultra vires,* and to dismiss the plaintiffs' complaints, the conclusion has been reached as stated below.

The judgment of this Court is that the Judgment of the Circuit Court in each of the cases above entitled be reversed, and that they be remanded to the Circuit Court, with leave to the plaintiffs to amend their complaints setting forth causes of action based upon the implied obligation hereinbefore referred to.

MESSRS. JUSTICES WATTS and MARION, and MR. ACTING ASSOCIATE JUSTICE R. O. PURDY concur.

MR. CHIEF JUSTICE GARY dissents.